McNEIL v. McNEIL.

(Circuit Court, N. D. California. January 11, 1897.)

1. JURISDICTION TO ANNUL STATE JUDGMENTS FOR FRAUD—JUDGMENTS OF DIVORCE.
    The federal tribunals have jurisdiction of suits to relieve against judgments of state courts obtained by imposition and fraud; and this jurisdiction extends to judgments of divorce.

2. SAME—LIMITATION.
    Code Civ. Proc. Cal. § 473, limiting to six months the right of a party to proceed for relief from a judgment taken against him "through his mistake, inadvertence, surprise or excusable neglect," does not apply to relief for fraud.

LACHES IN PROCEEDING TO ANNUL JUDGMENT OF DIVORCE.
    A delay of 18 months is such laches as precludes an independent suit to set aside a judgment of divorce upon the ground that it was obtained by fraud.

VOID JUDGMENT.
    It not being apparent on the record that the plaintiff in a divorce suit had not been a resident of the state for a sufficient length of time to give the court jurisdiction, the judgment is not void on its face; and, even if it were, it might be attacked by motion in the court which rendered it, and resort to a suit in equity would not be necessary.

Sullivan & Sullivan, for complainant.
Henry C. McPike, for defendant.

McKENNA, Circuit Judge (orally). This is a bill in equity to declare void, and to restrain the enforcement of, a judgment of divorce, and for an injunction to restrain the disposition of property. Demurrer by defendant. The ground of the suit is such fraud on the part of the plaintiff in the judgment as prevented notice to defendant, complainant in the suit at bar. Preliminarily, there are these questions presented by the demurrer: First. May a federal tribunal entertain such a suit? Second. If yes, has the plaintiff lost her rights by laches?

1. It is an established power of a court of equity to entertain suits to relieve against judgments obtained by imposition and fraud (Freem. Judgm. § 489, and cases cited); and the power extends to judgments of divorce (Id.). But it is claimed that the federal tribunals have no jurisdiction to grant a divorce; hence no jurisdiction to annul one.

The supreme court of the United States, in Barber v. Barber, 21 How. 582, said:

"The national power has no jurisdiction in the courts of the United States upon this subject of divorce or for allowance of alimony, either as an original proceeding in chancery or as an incident to divorce a vinculo, or to one from bed and board."

And Bishop on Marriage and Divorce states the rule to be:

"The national power has no jurisdiction of marriage and divorce within the local limits of the states. Therefore all laws on the subject, whether statutory or common, are within those limits state laws."

But these citations do not state or include the propositions involved here. Here there is no question if parties may be divorced or must forever remain together,—no question of the grounds of divorce. It is a question purely of chancery jurisdiction. For what the judgment was rendered is not essential. It is that it was obtained by fraud, and hence unjust to hold and use, and, because it is, the court has jurisdiction.

In Johnson v. Waters, 111 U. S. 667, 4 Sup. Ct. 619, the supreme court, by Mr. Justice Bradley, said, speaking of fraud:

"The court of chancery is always open to hear complaints against it, whether committed in pais or in or by means of judicial proceedings, and in such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it,"—citing Story, Eq. Jur. §§ 1570, 1573; Kerr, Fraud & M. 352.

This subject was discussed in Gaines v. Fuentes, 92 U. S. 10, and Barrow v. Hunton, 99 U. S. 80. The object of the latter suit was to set aside a sale of lands of a deceased person which had been made and confirmed by order of a state court having jurisdiction. Jurisdiction of probate of will and the administration of an estate of a deceased is as essentially a state matter as is marriage and divorce. The Broderick Will Case is instructive. It was a suit to set aside the probate of a will. Held, that it could not be done, not because the matter was of state regulation, but because the jurisdiction rested in another court. Probates of wills, besides, were held to be an exception to the jurisdiction in equity cases of fraud. The case manifestly depended upon the separate jurisdictions of the courts between probate and equity, and it was held in California v. McGlynn, 20 Cal. 233, to be applicable to the district court (a court of equity) of the state. It is also manifest that, if the jurisdiction had been declared in the state district court, it could have been exercised by the federal circuit court, the necessary difference of citizenship existing.

But it is further contended that the limitation of federal jurisdiction is not only as to divorce judgments, but all state judgments. Randall v. Howard, 2 Black, 585, and Nougue v. Clapp, 101 U. S. 551, are cited. But those cases do not go so far. The principle of both cases is that a federal court will not sit in review of the judgments of a state court, and review or redress its errors. That must be done in the appellate tribunals of the state. In neither case was there the ground of equitable jurisdiction as defined in the cases which I have

cited, and of which the case at bar is an instance. See Young v. Sigler, 48 Fed. 182; also, U. S. v. Throckmorton, 98 U. S. 61, where the grounds of equitable jurisdiction are stated and precisely defined with Mr. Justice Miller's usual accuracy.

It is further urged that plaintiff has been guilty of laches. The judgment of divorce of which she complains was rendered February 24, 1892, and her allegation as to her knowledge of it is as follows:

"That your orator never received any summons or process of any kind in said action for divorce commenced as aforesaid by said James McNeil, and never knew of the commencement of pendency of said action, until the ―――― day of October, 1893."

The original bill was filed in this court April 10, 1895; that is, the judgment was 20 months old before she heard of it, and she allowed 18 months to elapse after knowledge before filing her bill to set it aside. By section 473 of the Code of Civil Procedure of the state it is provided that the court in which a judgment is rendered may, in furtherance of justice, and on such terms as may be proper, relieve a party or his legal representatives from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect, but limits the application to the period of six months after the order or proceeding taken. In Norton v. Railroad Co., 97 Cal. 388, 30 Pac. 585, and 32 Pac. 452, passing on this section, the supreme court of the state of California said that it did not apply to relief for fraud, that on the latter ground application could be made within a reasonable time, and intimated that six months might be the limit of such time. If so, her remedy―that is, the remedy of the complainant in this court―by motion in the state court is gone. At any rate, three times the duration of the period intimated by the supreme court would surely be held unreasonable, and hence plaintiff's remedy in the court which rendered the judgment is gone. Has she been guilty of such laches as precludes an independent suit? A judgment of divorce, more than a judgment of any other kind, would seem from its great effects to claim from a party affected, as well as from the insistence of the law, an immediate attention; but the plaintiff, nevertheless, does not account for the delay, but rests upon its period without a supporting explanation. This is, I think, a serious defect in the bill. I do not mean to say that 18 months of itself is laches; but 18 months under the circumstances may be. The judgment was divorce, with its serious consequences, personal and property. More than judgments of other kinds, it would seem to claim from the interest and feelings of a party, and from the interest of the law, a timely attention. Eighteen months do not seem to be timely. An inspection of the record would naturally be made immediately after her knowledge was obtained, and, if made, would have disclosed the grounds of divorce to have been charges made, and which, according to plaintiff, were disproved by her in 1888; made again in the Pennsylvania suit, and abandoned; hence easily exposed and refuted. Eighteen months, therefore, seem like laches, and, against this seeming, something should be alleged. A point is made that, McNeil not having been a resident of the state for a year when he brought his suit for divorce, the court had no juris-

diction. This, however, is not apparent on the record; and hence the judgment cannot be said to be void on its face, and therefore subject to attack at any time. If so, it might be by motion in the court which rendered it, and a necessity to resort to a suit in equity would not exist. The demurrer is sustained on the ground of laches, with leave to amend, alleging causes and excuse for delay.