NATIONAL SURETY CO. OF NEW YORK et al. v. STATE BANK OF
HUMBOLDT, HUMBOLDT, NEB., et al.

(Circuit Court of Appeals, Eighth Circuit. February 2, 1903.)

No. 1,753.

1. FEDERAL COURTS—EQUITABLE JURISDICTION—ADEQUATE REMEDY AT LAW—
SUCH REMEDY IN STATE COURTS IMMATERIAL.

The national courts have jurisdiction in equity in the absence of an
adequate remedy at law in those courts. The test of their equitable
jurisdiction is the absence of such a remedy in the federal courts. The
presence or absence of a remedy at law in the state courts is not the test
of the jurisdiction in equity of the federal courts.

2. SAME—TEST ADEQUATE REMEDY AT LAW IN 1789 UNLESS SUBSEQUENTLY
CHANGED BY CONGRESS.

The equitable jurisdiction of the federal courts vested in them under
the judiciary act of 1789, and, where it has not been subsequently
changed by act of congress, the test of that jurisdiction is the adequacy
of the remedy at law for wrongs of the character under consideration in
the year 1789, when the judiciary act was adopted.

3. SAME—STATE LEGISLATION MAY NOT IMPAIR OR DESTROY.

The states did not grant, and they cannot by their legislation revoke,
impair, or destroy, the equitable jurisdiction of the national courts.

4. SAME—STATE LEGISLATION MAY ENLARGE.

While state legislation may not impair or destroy, it may enlarge, the
rights and remedies in equity in the national courts. "A party, by going
into a national court, does not lose any right or appropriate remedy of
which he might have availed himself in the state courts of the same lo-
cality." Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447.

Rights created and remedies provided by the statutes of the state to be
pursued in the state courts may be enforced and administered in the na-
tional courts, either at law, or in equity, or in admiralty, as the nature
of the rights or remedies may require.

5. SAME—CONSTRUCTION OF STATUTES—SECTIONS 602-611, CODE OF NEBRASKA.

Sections 602-611 of the Code of Nebraska, which authorize an original
suit in the court, in which an unconscionable judgment, that the defend-
ant was prevented by unavoidable casualty from defending against, was
rendered, to enjoin its collection and to annul it, provide a cumulative
remedy, and do not impair the original equitable jurisdiction of the cir-
cuit courts of the United States to grant appropriate relief for a like cause
in cases in which the citizenship of the parties and the amounts in con-
troversy give those courts jurisdiction.

6. JUDGMENTS—JURISDICTION IN EQUITY TO RESTRAIN ENFORCEMENT FOR AC-
CIDENT.

The federal courts have plenary jurisdiction to enjoin the enforcement
of unconscionable judgments and decrees, to which the defendants had
meritorious defenses, that they were prevented from availing themselves
of by fraud, accident, or mistake. They have the same power to relieve
on account of accident or mistake as on account of fraud.

7. FEDERAL COURTS—JURISDICTION IN EQUITY TO RESTRAIN ENFORCEMENT OF
UNCONSCIONABLE JUDGMENTS.

A federal circuit court, sitting in equity, has jurisdiction to enjoin the
enforcement of an unconscionable judgment of a state or of a national
court for new causes, such as fraud, accident, or mistake, which pre-
vented the judgment defendant from availing himself of a meritorious
defense that was not fairly presented to the court which rendered the
judgment.

But it has no power to take such action on account of errors or irregu-
larities in the proceedings on which the judgment or decree is founded,
or on account of erroneous or illegal decisions by the court which ren-
dered the judgment or decree.

120 F.—38

8. SAME—EQUITABLE JURISDICTION TO RESTRAIN ENFORCEMENT OF JUDGMENTS OF STATE COURTS.

The national courts, sitting in equity, have the same jurisdiction and power to restrain judgment plaintiffs in unconscionable judgments of the state courts from using them to extort money from defendants who ought not to pay them, that they have to enjoin such plaintiffs in like judgments of the federal courts.

9. SAME—EFFECT OF SECTION 720, REV. ST.

The federal courts are prohibited by section 720, Rev. St. [U. S. Comp. St. 1901, p. 581], from staying proceedings of a state court or of its officers.

But it is no violation of that section for these courts to enjoin the plaintiff in an unconscionable judgment of a state court from using it to extort money from a defendant who ought not, in equity and good conscience, to pay it, because such an injunction acts on the person of the judgment plaintiff, and not upon the state court or its officers.

10. FOREIGN CORPORATIONS — SERVICE — NEGLIGENCE OF STATE OFFICER IN REMITTING SUMMONS NOT ATTRIBUTABLE TO.

The failure of an officer of a state, whom foreign corporations are compelled by the statutes of the state to appoint their agent to receive service of process as a condition of doing business in the state, to comply with a statute which requires him to send a summons to the defendant, to which it is directed, immediately upon its receipt, is not such fault or negligence of the defendant corporation as will estop it from securing equitable relief from an unconscionable judgment, which it was prevented from defending itself against by the neglect of the officer.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

This is an appeal from a final decree which dismissed the bill of the complainants, National Surety Company of New York and National Surety Company of Missouri, two corporations that sought an injunction against the State Bank of Humboldt, its attorneys, and John F. Cornell, the Auditor of Public Accounts of the State of Nebraska, to restrain them from enforcing a judgment of $7,842.40 and costs which was rendered on May 17, 1900, in the district court of Richardson county, Neb., against the National Surety Company of Missouri, and in favor of the bank. These are the material facts which condition the rights of the parties in this court: The National Surety Company of Missouri made its bond, by which it agreed to indemnify the bank against such losses as it should sustain by reason of the fraud or dishonesty of its cashier between March 31, 1896, and April 1, 1897, and should discover prior to October 1, 1897. The bank sustained losses on account of the fraud and dishonesty of its cashier during the term of the bond, but it did not discover them until more than six months after the expiration of the term, so that no cause of action in favor of the bank upon the bond ever accrued. Nevertheless the bank commenced an action on the bond for the amount of these losses in the district court of Richardson county, in the state of Nebraska, against the National Security Company of Kansas City, Mo., and delivered the summons to the Auditor of Public Accounts of the State of Nebraska, who accepted service of it, but failed to send it to either of the appellants, or to notify them of the pendency of the action. The statutes of Nebraska required every surety company not incorporated under the laws of that state to appoint the Auditor of Public Accounts its attorney, on whom process against it might be served in any action, and commanded him to forward a copy of any process served upon him forthwith to the secretary of the company to which it was addressed. Comp. St. Neb. 1901. c. 16, §§ 175, 176.

¶ 8. Conclusiveness and effect of judgments as between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.

¶ 10. Service of process on foreign corporations, see note to Eldred v. American Palace Car Co., 45 C. C. A. 3.

On May 17, 1900, judgment was entered by default in the action ·in the district court of Richardson county against the National Security Company of Kansas City, Mo., for $7,842.40 and costs. On July 23, 1900, the term of that court closed, and it adjourned sine die. Neither of the surety companies had any notice or knowledge of the judgment, or of the action in which it was rendered, until August 6, 1900. On June 9, 1897, the National Surety Company of New York received the assets and assumed the liabilities of the National Surety Company of Missouri, so that, if the judgment against the latter is collected, the former must pay it. In this state of the case the surety companies prayed the court below to restrain the bank, its attorneys, and John F. Cornell, from enforcing the judgment, on the ground that they had a perfect defense to the claim on which it was founded, which they were prevented from presenting by the failure of the auditor to send them the summons, without any fault or negligence on their part; and the court below denied their prayer, because, in its opinion, sections 602–611, pp. 1340, 1341, and 1342, of the Compiled Statutes of Nebraska of 1901, provided the complainants with an adequate remedy at law, and deprived the federal courts of jurisdiction in equity to grant the relief they sought.

Charles J. Greene and Ralph W. Breckenridge, for appellants.

John L. Webster (Isham Reavis and Frank Reavis, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The important question in this case is whether or not a federal court has jurisdiction in equity to restrain the parties to an unconscionable judgment of a state court from enforcing it, when the complainants in the bill had a perfect defense to the claim on which the judgment was founded, which they were prevented from presenting to the state court by accident or mistake, and when the statutes of the state have provided an original proceeding in the court in which the judgment is rendered to enable aggrieved parties to obtain relief against such judgments.

Much has been said and written by counsel for the respective parties in this suit upon the question whether or not the service of the summons upon the Auditor of Public Accounts of the State of Nebraska, and his acceptance thereof, constituted a service upon the Missouri corporation, and gave the state court jurisdiction of the action against it, and upon the question whether or not the action and judgment against the National Security Company of Kansas City, Mo., were, in effect, an action and judgment against the National Surety Company of Missouri. But, in our opinion, these questions do not condition the determination of this case; and, without ·deciding or intimating any opinion concerning them, the positions of counsel for the appellees will be conceded. For the purposes of the discussion and decision of this case, it will be admitted that the judgment against the security company is a judgment against the surety company, and that by virtue of the service upon, and the acceptance thereof by, the Auditor of Public Accounts, the state court acquired jurisdiction of the subject-matter and of the parties to the action, and lawfully rendered the judgment against the surety company.

The gravamen of this bill, however, is not that there was no service of the summons in the action at law. It is that in that action a

judgment which ought not, in equity and good conscience, to be paid, has been rendered against the surety company, when it had a perfect defense to the action, of which it was prevented from availing itself by accident or mistake, without fault or negligence on its part. It is conceded that the judgment was regularly and legally rendered after due service of the summons. Yet the fact remains that it is a judgment without cause, which the appellants ought not to be required to pay, and which they were prevented from defending themselves against by the failure of John F. Cornell, the Auditor of Public Accounts of the State of Nebraska, to send them the summons as the statute directed.

It is said that the complainants are entitled to no relief, because Cornell was the agent of the judgment defendant, the Missouri company, to receive the service, and his negligence was its negligence. In support of this contention the remark of Mr. Justice Gray in Knox Co. v. Harshman, 133 U. S. 152, 155, 156, 10 Sup. Ct. 257, 33 L. Ed. 586, where the county clerk was designated by the statutes of Missouri to receive service of process against the county, that "any neglect of the clerk in communicating the fact to the county court was neglect of an agent of the county, and did not affect the validity of the service or of the judgment," is cited. In that case the Supreme Court first decided that the judgment against Knox county was just and right, and that it had no defense to the cause of action upon which it was founded (page 155, 133 U. S., and page 258, 10 Sup. Ct., 33 L. Ed. 586), and then held that the failure of the county clerk to give notice of the service of the summons was so far the negligence of the county that it did not invalidate the service. That court did not decide that the failure of this clerk was such negligence of the county as would have deprived it of equitable relief if that failure had prevented it from interposing a meritorious defense. In the case at bar the validity of the service of the summons is conceded. It is further admitted that, if any fault or negligence of the surety companies prevented them from presenting their defense in the action at law, they are estopped from obtaining relief in equity. But how can it be fairly or justly said that it was the fault of these companies, or their negligence, that John F. Cornell, the Auditor of Public Accounts of the State of Nebraska, failed to discharge his statutory duty to send them the summons? They did not select him as their agent. They had no command or control of his action—no power to discharge or dismiss him. They were compelled by the statutes of the state of Nebraska to appoint and retain him as their agent to receive service of process, as a condition of doing business in that state. He was chosen, not by the surety companies, but by the state of Nebraska. His acts and proceedings were controlled and commanded, not by these corporations, but by the state. The state required him to send the summons to this Missouri corporation, just as it required that corporation to appoint him its agent to receive the service. Comp. St. Neb. 1901, c. 16, §§ 175, 176. The corporation obeyed the statute, and the officer of the state violated it. The corporation could not have anticipated its violation. It had a right to rely on the legal presumption that the officer of the state would do his duty. Nothing that the corporation could have

lawfully done, nothing that it could have failed to do, could have prevented the failure of this officer. The power of control is the test of the liability of a principal for the negligence of his alleged agent. If the principal cannot control and direct him in the discharge of a given duty, then he is not his agent in its performance and the alleged principal is neither chargeable with nor liable for his negligence in its discharge. Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 107; Atwood v. Railway Co. (C. C.) 72 Fed. 447, 454, 455; Byrne v. Railroad Co., 9 C. C. A. 666, 61 Fed. 605, 608, 24 L. R. A. 693; Hilsdorf v. City of St. Louis, 45 Mo. 94, 98, 100 Am. Dec. 352; Town of Pawlet v. Rutland & W. R. Co., 28 Vt, 297, 300; Miller v. Railroad Co., 76 Iowa, 655, 659, 39 N. W. 188, 14 Am. St. Rep. 258; Wood, R. R. § 388; Donovan v. Construction Syndicate (1893) 1 Q. B. Div. 629; Rourke v. Colliery Co., 2 C. P. Div. 205. The neglect of Cornell to notify the surety companies of the pendency of the action against the Missouri corporation was not their fault or negligence, and it is no defense to their claim for equitable relief against this judgment, because they had no command or control of his action. The failure of an officer of a state, whom foreign corporations are compelled by the statutes of the state to appoint their agent to receive service of process, as a condition of doing business in the state, to comply with a statute which requires him to send a summons to the defendant, to which it is directed, immediately upon its receipt, is not such fault or negligence of the defendant corporation as will estop it from securing equitable relief from an unconscionable judgment, which it was prevented from defending itself against by the neglect of the officer. It is an unavoidable accident, which the corporation could neither have foreseen nor anticipated.

We have, then, an unconscionable judgment at law for $7,842.40 in favor of a citizen of Nebraska, to which the appellants, citizens of New York and Missouri, respectively, had a good defense, which they were prevented, by unavoidable accident, unmixed with fault or negligence on their part, from availing themselves of. The appellees are about to enforce this judgment. Has the federal court, sitting in equity, the jurisdiction to prevent them from so doing? Fraud, accident, and mistake are three great heads of equity jurisprudence; and whenever injustice or wrong, irremediable at law, is about to result from either, power is vested in, and the duty is imposed upon, the courts of equity, to prevent the threatened injury. Their jurisdiction rests upon the fact that, unless they act, wrong will be perpetrated, which cannot be remedied; and the bills exhibited to them are appeals to the consciences of the chancellors, to prevent injustice. Counsel for the appellees concede that the federal courts have equitable jurisdiction to enjoin the enforcement of unconscionable judgments at law which have been procured by fraud, but they insist that they are without power to restrain the collection of those which are secured by accident or mistake. But the foundation of equity jurisdiction is the wrong that will be perpetrated if the court of equity does not act. Accident and mistake are as well established grounds for the action of a court of equity as fraud. It is as unjust—as abhorrent to the conscience of the chancellor—that one who does not

owe a judgment which has been secured against him by accident should be compelled to pay it, as it is that he should be compelled to pay one procured by fraud. The injury is the same in each case. Both cases fall under equally well recognized heads of equity jurisdiction. Both appeal with equal force to the conscience of the chancellor, and the conclusion is irresistible that each is entitled to command the same measure of equitable relief. The federal courts, sitting in equity, have the same power to prevent the enforcement of unjust judgments at law, procured by accident or mistake, that they have to prevent the collection of those obtained by fraud. They have plenary jurisdiction to restrain the enforcement of judgments and decrees to which the defendants had meritorious defenses, that they were prevented from interposing either by fraud or accident or mistake unmixed with their own negligence. Marine Ins. Co. v. Hodgson, 7 Cranch, 333, 3 L. Ed. 362; Hendrickson v. Hinckley, 17 How. 442, 444, 15 L. Ed. 123; Hungerford v. Sigerson, 20 How. 156, 161, 15 L. Ed. 869; Gaines v. Fuentes, 92 U. S. 10, 22, 23 L. Ed. 524; Barrow v. Hunton, 99 U. S. 80, 85, 25 L. Ed. 407; Johnson v. Waters, 111 U. S. 640, 667, 4 Sup. Ct. 619, 28 L. Ed. 547; Arrowsmith v. Gleason, 129 U. S. 86, 97, 98, 9 Sup. Ct. 237, 32 L. Ed. 630; Marshall v. Holmes, 141 U. S. 589, 596, 12 Sup. Ct. 62, 35 L. Ed. 870. The case last cited was a suit in equity to enjoin the enforcement of judgments, and the Supreme Court there reiterated, as the settled rule upon this subject, the declaration of Chief Justice Marshall, made more than 70 years before, in Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362, that:

"Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

A careful examination of the cases cited by counsel for the appellees in support of their contention here discloses nothing inconsistent with this rule. There is not one of them which holds that the federal circuit courts have less power or jurisdiction to grant relief against unconscionable judgments on the ground of accident than they have to grant it on the ground of fraud, while in the opinions in Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362; Hendrickson v. Hinckley, 17 How. 442, 444, 15 L. Ed. 123; Crim v. Handley, 94 U. S. 652, 653, 24 L. Ed. 216; Metcalf v. Williams, 104 U. S. 93, 96, 26 L. Ed. 665; Embry v. Palmer, 107 U. S. 3, 11, 2 Sup. Ct. 25, 27 L. Ed. 346; Knox Co. v. Harshman, 133 U. S. 152, 154, 10 Sup. Ct. 8, 33 L. Ed. 249; and Marshall v. Holmes, 141 U. S. 589, 596, 599, 12 Sup. Ct. 62, 35 L. Ed. 870,—the Supreme Court expressly places accident on a par with fraud as a basis for such relief. In many of the cases which counsel cite, the gravamen of the bill was fraud, not accident, and in those cases the sufficiency of the allegations or of the proof of the fraud is naturally discussed at length. In the cases in which relief was denied, the ground of the denial was not that a meritorious defense was prevented by accident, rather than by fraud, but that the cases lacked one or more of the essential ele-

ments of a good cause of action for either fraud or accident. The indispensable elements of such a cause of action are (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law. The case of Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407, lacked the second element—the meritorious defense—and the court pointed out in that case the radical and controlling difference and the established line of demarcation between suits to enjoin the collection of judgments for errors and irregularities in the proceedings on which they are based, or for illegality or incorrectness of the judgments or decisions themselves, and suits to restrain the enforcement of judgments for new causes, such as frauds, accidents, or mistakes, that prevented meritorious defenses, of which the courts which rendered the judgments were not advised, and which they neither considered nor adjudged. It declared that suits of the former class would not, while suits of the latter class would, warrant the issue of an injunction to restrain the enforcement of the judgments; that the case then before it was, in the absence of a meritorious defense, of the former class, and for that reason the complainant was entitled to no relief. In Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870, this distinction was affirmed, and this line of demarcation was broadened, deepened, and fixed. That case was declared to be one of the second class, and the enforcement of a decree of the state court was prohibited. In Knox Co. v. Harshman, 133 U. S. 152, 10 Sup. Ct. 8, 33 L. Ed. 249, the defendant in the judgment had no defense to the action upon which it was founded, and for that reason its bill could not be maintained. For the same reason, Walker v. Robbins, 14 How. 584, 14 L. Ed. 552, fell in the first class of cases, and the complainant was defeated. Beals v. Illinois, etc., Railroad Co., 133 U. S. 290, 10 Sup. Ct. 314, 33 L. Ed. 608, was a case based upon fraud in obtaining the judgment, and the bill was dismissed because there was a failure of proof of the fraud. McNeil v. McNeil (C. C.) 78 Fed. 834, was a suit in equity to restrain the enforcement of a decree of divorce rendered by a state court, on account of fraud in its procurement. The court held that it had jurisdiction to grant the relief, but denied it on account of the negligence of the complainant. Little Rock Junction Railway v. Burke, 27 U. S. App. 736, 747, 749, 13 C. C. A. 341, 347, 349, 66 Fed. 83, 90, 91, failed because there was an adequate remedy at law, by ejectment in the federal court, if there was any remedy. The facts stated in the case appeared on the face of the record in the state court, and were as available in ejectment as in equity. In Allen v. Allen, 38 C. C. A. 336, 97 Fed. 525, the gravamen of the bill was fraud, and it appeared that the very defense which the complainant alleged was prevented by the fraud was actually considered and adjudged by the court which rendered the judgment, so that the case presented no new cause or ground for relief, but fell in the first class of cases, specified in Barrow v. Hunton. In Central National Bank v.

Stevens, 169 U. S. 432, 464, 18 Sup. Ct. 403, 42 L. Ed. 807, the essential elements of fraud, accident, or mistake that prevented a meritorious defense were lacking; and the Supreme Court held that it would not sustain an injunction, because the proceeding was, in effect, a suit to review the decision of the court, the execution of whose decree it sought to enjoin.

This brief review of the cases cited for appellees will suffice to show what their careful reading will demonstrate—that they contain no decision that the federal circuit court may not lawfully enjoin the enforcement of an unconscionable judgment or decree of a state court, based upon an unfounded claim, which the defendant was prevented by unavoidable accident from defeating. More than this, they evidence this indubitable principle, which has now become so firmly established by repeated decisions of the Supreme Court that it is no longer debatable: A federal circuit court, sitting in equity, has jurisdiction to enjoin the enforcement of an unconscionable judgment of a state or of a national court for new causes, such as fraud, accident, or mistake, which prevented the judgment defendant from availing himself of a meritorious defense that was not fairly presented to the court which rendered the judgment. But it has no power to take such action on account of errors or irregularities in the proceedings on which the judgment or decree is founded, or on account of erroneous or illegal decisions by the courts which rendered the judgment or decree. The reason of this rule is that cases of the former class present new controversies, which have never been raised in other courts, of which the federal courts cannot escape jurisdiction if they arise between citizens of different states, and involve the requisite amount (25 Stat. 433; 1 U. S. Comp. St. 1901, tit. 13, c. 7, § 629, p. 508), while cases of the latter class involve a jurisdiction which does not exist—a jurisdiction of the federal courts to review and revise the acts and decisions of courts of co-ordinate jurisdiction upon questions which they have lawfully considered and adjudged. Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, 32 L. Ed. 630; Johnson v. Waters, 111 U. S. 547, 4 Sup. Ct. 619, 28 L. Ed. 547; Marshall v. Holmes, 141 U. S. 582, 12 Sup. Ct. 62, 35 L. Ed. 870; Mississippi Mills v. Cohn, 150 U. S. 202, 14 Sup. Ct. 75, 37 L. Ed. 1052; United States v. Norsch (C. C.) 42 Fed. 417; Young v. Sigler (C. C.) 48 Fed. 182; McNeil v. McNeil (C. C.) 78 Fed. 834; Perry v. Johnston (C. C.) 95 Fed. 322.

The argument of counsel for appellees that, although the Circuit Court of the United States may enjoin a judgment plaintiff from enforcing an unconscionable judgment of a national court, it is without power to prevent him from collecting a like judgment of a state court, because section 720 of the Revised Statutes [U. S. Comp. St. 1901, p. 581] prohibits the issue of an injunction by a federal court to stay proceedings in a state court, and because such an injunction would, in effect, nullify the judgment of the state court, and tend to produce a conflict of jurisdiction between the state and the federal courts, has been carefully considered, but it is not persuasive. Section 720 [U. S. Comp. St. 1901, p. 581] forbids the federal courts from staying the proceedings of the state court, but it does not grant to litigants

of whom the federal courts have jurisdiction unlimited license to use the unconscionable judgments of the state court to inflict irremediable injury upon the defendants. An injunction, as in Leathe v. Thomas, 38 C. C. A. 75, 97 Fed. 138, which restrains a sheriff—an officer of the state court—from executing the judgment of that court, is a plain violation of the federal statute, because it stays the proceedings of the state court, and it cannot be sustained. But an injunction which forbids the plaintiff in such a judgment from making an inequitable use of it acts upon him—upon his person only. It forbids him from perpetrating a wrong, but it neither restrains nor stays the proceedings of the state court or of its officer, and it does not fall under the ban of the section of the statute under consideration. Marshall v. Holmes, 141 U. S. 589, 599, 600, 12 Sup. Ct. 62, 35 L. Ed. 870.

The constitution of the United States and the acts of Congress have conferred upon the federal circuit courts the jurisdiction to hear and determine controversies between citizens of different states in which the matter in dispute exceeds $2,000 in value. This suit presents such a controversy. It is a new controversy, which has never been presented to or decided by the state court which rendered the judgment, the enforcement of which the complainants seek to prevent. It involves the question whether or not the appellants were prevented by unavoidable accident from availing themselves of a good defense to the claim on which that judgment is based, and, if so, whether or not the judgment plaintiff should be permitted to collect the judgment. The Circuit Court of the United States has jurisdiction of this controversy, and the appellants have the legal right to a hearing and decision of the questions which it presents, and to the relief which the decision of those questions entitles them. That court may not lawfully renounce that jurisdiction. It cannot rightfully deny to the appellants the right to the decision, decree, and writ to which they show themselves entitled. It is not the judgment of the state court against which these appellants level the injunction they seek. It is against the plaintiff in that judgment. It is against the unconscionable use by that plaintiff of the judgment which he has recovered, to perpetrate an unconscionable wrong. The basis of the suit is the threatened use of this judgment to extort from the appellants money which they ought not to be required to pay, and the federal circuit court is vested with the same power and charged with the same duty to enjoin the appellees from perpetrating this extortion by means of an unconscionable judgment of a state court, that it is to prevent them from effecting it by the use of such a judgment of a national court, by means of a fraudulent patent, deed, mortgage, or by the use of any other instrument or device against which they have no remedy at law. The extortion of $7,842 from the appellants by the use of this judgment of the state court will inflict upon them as grievous an injury as would its extortion by a like judgment of a national court, and the Circuit Court of the United States has the same preventive power, and the appellants are entitled to the same measure of relief from it, in the one case as in the other. The decisions of the Supreme Court which have been cited, however, have so conclusively disposed of this question that more ex-

tended discussion would be unprofitable; and we leave it with this brief statement of the reasons which have induced, and which amply sustain, the rule that the Circuit Courts of the United States have the same jurisdiction and power to enjoin a judgment plaintiff from enforcing an unconscionable judgment of a state court, which has been procured by fraud, accident, or mistake, that they have to restrain him from collecting a like judgment of a federal court.

But the statutes of Nebraska provide that the state court in which this judgment was rendered has the power to vacate or to modify it, and the authority to enjoin proceedings before it, for unavoidable casualty or misfortune preventing the aggrieved party from prosecuting or defending (Code Neb. §§ 602–611) and these provisions of the Code prescribe an original suit for that purpose to be commenced by petition and summons within two years after the judgment is rendered (Id. §§ 603–610). It is a general rule that the absence of an adequate remedy at law is a sine qua non of jurisdiction in equity, and it is earnestly insisted by counsel for the appellees that the complainants in this suit were entitled to no relief in equity in the Circuit Court of the United States, because they had an adequate remedy at law in the state court which rendered this judgment, under these provisions of the Code of Nebraska. There are, however, many reasons why this contention cannot be sustained. The first, and one that is fatal to the position, is that it is an absence of an adequate remedy at law in the national courts, and that alone, which conditions jurisdiction in equity in those courts, and the appellants have no such remedy. The fact that they have a remedy at law in the state courts is not material. Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819; Arrowsmith v. Gleason, 129 U. S. 86, 98, 9 Sup. Ct. 237, 32 L. Ed. 630; Mayer v. Foulkrod, 4 Wash. (C. C.) 349, Fed. Cas. No. 9,341; Bean v. Smith, 2 Mason, 252, Fed. Cas. No. 1,174; Coler v. Board (C. C.) 89 Fed. 257; U. S. Life Ins. Co. v. Cable, 39 C. C. A. 264, 98 Fed. 761. When the controversy which this bill discloses arose between these citizens of different states, and was presented to the Circuit Court of the United States, that court had jurisdiction to hear and determine it, and the appellants had the legal right to the opinion and the judgment of that court upon the questions which it presented. This right and this jurisdiction were not conditioned by the fact that the complainants had or had not like rights or remedies in the state courts, or by the fact that those courts had or had not concurrent jurisdiction. Indeed, this right and this jurisdiction were provided by the Constitution, and granted by the acts of Congress, for the express purpose of enabling citizens of different states to escape from an adjudication of their rights by state courts which had concurrent jurisdiction to grant the relief and to administer the remedies which they were seeking in the national courts. The rights of these appellants to their hearing and decree in the federal court, and the jurisdiction of that court to determine their controversy, were independent of state legislation. The state of Nebraska did not grant, and it could not revoke or impair, that right or that jurisdiction. As the appellants had the right to the hearing and decision of their controversy by the national court, they were entitled to institute and to main-

tain in that court the kind of proceeding which, according to the established rules and practice of the United States Circuit Court, would present to it, and secure its opinion and judgment upon, the merits of their controversy. Under the rules and practice of that court, there was no action or proceeding at law which would accomplish that end. In other words, the appellants had no adequate remedy at law in the federal court, and yet they had the right to a hearing and to a determination of their controversy in that court, and to the relief at the hands of that court to which the law and its rules and practice entitled them. The conclusion is unavoidable that their suit in equity was well founded, and that it was the right and the duty of the court below to hear and to determine it upon its merits, and to grant to the complainants the appropriate relief.

Another reason why the proceeding provided by the Code of Nebraska does not oust the jurisdiction in equity of the national Circuit Court is that, while state legislation may enlarge, it cannot destroy or impair, that jurisdiction. The power of the circuit courts of the United States to administer rights and remedies in equity was vested in them, as a part of the judicial power of the nation, under the constitution of the United States and the judiciary act of 1789; and, as it was not granted by, it may not be revoked, impaired, or destroyed by, the act of any state. Unless changed by subsequent acts of Congress, the adequate remedy at law, which is the test of the equitable jurisdiction of the courts of the United States, is that which existed when that jurisdiction was vested—that which was when the act of 1789 was adopted. McConihay v. Wright, 121 U. S. 201, 206, 7 Sup. Ct. 940, 30 L. Ed. 932. As there were no adequate remedies at law for a wrong of the character of that of which the appellants complain in 1789, and as the Congress has since provided none, this case falls within the equitable jurisdiction of the Circuit Court, and must be there heard, determined, and relieved.

Moreover, the provisions of the Code of Nebraska which have been cited do not purport or attempt to destroy or to diminish the jurisdiction in equity of either the federal or the state courts. They simply provide a cumulative remedy, and leave those previously existing unaffected. Meyers v. Smith, 59 Neb. 30, 80 N. W. 273; Munro v. Callahan, 55 Neb. 75, 75 N. W. 151, 70 Am. St. Rep. 366.

And finally the federal court, sitting in equity, has jurisdiction in an appropriate case to enforce the new right and to administer the new remedy created by these provisions of the Code of Nebraska. Rights created and remedies provided by the statutes of the states, to be pursued in the state courts, may be enforced and administered in the national courts, either at law, in equity, or in admiralty, as the nature of the rights or remedies may require. Darragh v. H. Wetter Mfg. Co., 23 C. C. A. 609, 615, 616, 78 Fed. 7, 13, 14; Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed. 903; Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447; Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599; Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909; Cowley v. Railroad Co., 159 U. S. 569, 582, 16 Sup. Ct. 127, 40 L. Ed. 263. "A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the

state courts of the same locality." Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447. It is only in equity that the remedy provided by the statute of Nebraska can be administered in the United States Circuit Court, because there is no adequate remedy at law in that court which will effect the issue of an injunction against the enforcement of a judgment at law, and the avoidance of that judgment, the relief which that statute prescribes.

Our conclusion is that the appellants had no adequate remedy at law which prevented them from invoking the aid of the United States Circuit Court, sitting in equity, to secure for them the relief which they have sought in this suit. In opposition to this view, counsel for the appellees have cited, and before reaching this conclusion we have carefully examined, Nougue v. Clapp, 101 U. S. 552, 25 L. Ed. 1026; Furnald v. Glenn (C. C.) 56 Fed. 372, 374; Travelers' Protective Association v. Gilbert, 49 C. C. A. 309, 111 Fed. 269, 55 L. R. A. 538; Crim v. Handley, 94 U. S. 659, 660, 24 L. Ed. 216; and other cases of less importance. But these cases do not rule the question here presented, and there were reasons other than the fact that there were adequate remedies at law in the state courts why the complainants failed in those cases. In Crim v. Handley the judgment defendant was guilty of negligence in his conduct of the trial of the action at law, which estopped him from obtaining relief in equity. Nougue v. Clapp was a bill in equity to recover $20,000 damages, and to avoid a foreclosure sale under a decree of a state court, which had been rendered in a proceeding of which the defendant had notice, and to which he was a party. He had an adequate remedy at law to recover the $20,000, and he had been guilty of negligence in the conduct of his defense in the state court. In Furnald v. Glenn, relief was denied because the state court whose decrees were assailed had not finally disposed of the case before it, and still had jurisdiction in the same case in which the decrees were rendered to right any wrong which was likely to result from them. And in Travelers' Protective Association v. Gilbert, 49 C. C. A. 309, 111 Fed. 269, 55 L. R. A. 538, the averments of the fraud upon which the complainants relied were too vague and indefinite to effect the statement of a good cause of action on that ground; and the negligence of the secretary, who was not an officer of the state, but an agent of the complainant, was held to be imputable to the association, and fatal to its bill. None of these authorities portrays the complete cause of action in equity which the case at bar presents. None of them presents all the elements of such an action which the record in this case discloses. Each contains some, but none all, of the essential facts entitling the complainants to equitable relief. In this case all these facts concur—the judgment which it is against conscience to allow to be used to extort money that is not owing from a defendant remediless at law, the complete meritorious defense to the claim on which this judgment is based, the fact that the defendant in the judgment was prevented from availing itself of its defense to the cause of action by an unavoidable accident, and the absence of any negligence of the defendant or of its agents. These facts appeal with compelling force to the conscience of a chancellor. They have been presented to a court to which the Constitution and the acts

of Congress have granted the power, and upon which they have imposed the duty, to grant the relief to which the complainants are equitably entitled; and the decree which dismissed their bill must be reversed, and the case remanded to that court, with instructions to enter a decree for the complainants.

It is so ordered.