Present: All the Justices

ELIZABETH ANN LONG RYLAND,
EXECUTRIX OF THE ESTATE
OF POLLY E. LONG

v. Record No. 020306 OPINION BY JUSTICE CYNTHIA D. KINSER
                                          October 31, 2003
MANOR CARE, INC., ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

This appeal involves a chancery suit brought under the provisions of Code § 8.01-248(D) and challenges the circuit court's judgment setting aside a default judgment. Because we cannot say that the court's judgment was plainly wrong or without evidence to support it, we will affirm that judgment.

MATERIAL FACTS AND PROCEEDINGS

Manor Care, Inc. and Manor Care of America, Inc. (collectively "Manor Care"), filed a bill of complaint, seeking to set aside a default judgment that previously had been entered against it in favor of Elizabeth Ann Long Ryland, executrix for the estate of Polly E. Long ("Ryland"). The Circuit Court of Fairfax County had entered that default judgment in a medical malpractice action styled Ryland v. Tyroler, et al, No. 196801 (Va.

Cir. Ct. Aug. 31, 2001) (order granting default judgment).[1]

Manor Care unsuccessfully moved to have the default judgment in the medical malpractice action reconsidered or set aside. While that motion was pending, Manor Care filed this separate chancery suit under the provisions of Code § 8.01-428(D). The circuit court heard the following evidence ore tenus.

On July 18, 2001, Manor Care received from its registered agent the notice of motion for judgment and other papers concerning the medical malpractice action that Ryland had re-filed against it. Manor Care faxed those documents to its insurance company, PHICO Insurance Company ("PHICO"), on July 19, 2001, and requested PHICO to assign defense counsel to represent Manor Care as soon as possible. That same day, Manor Care sent the documents concerning the re-filed medical malpractice action to PHICO via a commercial overnight delivery service. The litigation coordinator for Manor Care acknowledged that Manor Care relied on PHICO to retain defense counsel and to assure that responsive pleadings were timely filed.

On July 25, 2001, after receiving the documents from Manor Care, PHICO assigned Vicki L. Layman ("Layman") to

---

[1] Ryland had re-filed the medical malpractice action after taking a nonsuit in a prior action.

defend the action.[2]  The written assignment, which PHICO

faxed to Layman on that date, requested Layman to enter an

appearance and answer the action on behalf of its insured,

Manor Care.  PHICO advised Layman that an action had been

filed in 1998 involving the same plaintiff and defendant,

and that it was reopening its file.  PHICO sent a copy of

the assignment to Manor Care.

　　　After receiving the assignment from PHICO, Layman

contacted the attorney representing Ryland and obtained an

extension of time to August 24, 2001, for Manor Care to

file responsive pleadings.[3]  Then, in a letter dated August

1, 2001, Layman advised PHICO that she was requesting an

increase in her hourly compensation for representing

PHICO's insureds.  Layman asked PHICO to advise her by

August 6, 2001, as to whether it agreed not only to her

increased fee but also to monthly billing.  If PHICO

approved the rate increase, Layman asked PHICO to forward

the necessary documents to confirm their agreement.

Finally, Layman advised PHICO that, in the event it did not

approve her fee increase, PHICO should immediately reassign

---

[2] Layman had represented Manor Care in the non-suited medical malpractice action filed by Ryland.

[3] According to Layman, responsive pleadings were originally due on August 7, 2001.

3

the defense of Ryland's medical malpractice case against Manor Care to another attorney since responsive pleadings were due on August 7, 2001.[4]

PHICO received Layman's August 1 letter on August 6, 2001.  PHICO's senior claims representative telephoned Layman that same day and left a detailed voice message authorizing the requested rate increase for Layman's defending Manor Care in the Ryland medical malpractice action.  However, PHICO never sent Layman a written agreement reflecting the rate increase.

On August 16, 2001, a Pennsylvania court, acting on a petition by the Insurance Commissioner of the Commonwealth of Pennsylvania, placed PHICO into "Rehabilitation." According to PHICO's senior claims representative, that action caused many defense attorneys to become reluctant about working for PHICO because all bills not paid as of that date were placed in the Rehabilitation estate.  Due to PHICO's financial circumstances, Layman notified PHICO, in a letter faxed to PHICO on August 21, 2001, that she was unable to represent Manor Care in the Ryland medical malpractice action and that PHICO, therefore, should immediately reassign the matter to another attorney.

_____

[4] Apparently, Layman did not advise PHICO at that time about the extended deadline for filing responsive

4

Layman also informed PHICO that Ryland's attorney had agreed to extend the deadline for filing responsive pleadings to August 24, 2001.

That same day, PHICO contacted another attorney, Gary Godard, about representing Manor Care and faxed "the new assignment" to him. Godard agreed to represent Manor Care, and in a letter received by PHICO on August 22, 2001, Godard's office confirmed that Godard would file appropriate responsive pleadings on behalf of Manor Care. On August 21, PHICO also advised Manor Care that a new attorney had been assigned to the case and that the attorney would file responsive pleadings. Manor Care's litigation coordinator did not contact PHICO again until August 30, 2001.

Layman received a voice message from Godard on August 23, 2001, and she then called Ryland's attorney to advise that Godard had been assigned to the case. In a prior telephone conversation with Ryland's attorney, Layman had requested a 30-day extension for filing responsive pleadings, but the attorney did not agree to her request. However, at trial, Manor Care attempted to show that Layman had "asked the judge" for and had received a verbal agreement that a 30-day extension would be granted to the

pleadings.

5

new defense counsel. The circuit court made a factual finding that there was no evidence to support any claim that such an extension had been agreed to or granted by the court. Nevertheless, the circuit court accepted that Manor Care had that understanding, whether it was right or wrong.

On August 27, 2001, PHICO learned that Godard had a conflict of interest and could not represent Manor Care. Consequently, PHICO contacted yet another attorney about representing Manor Care, but that attorney declined to do so on August 28, 2001. Two days later, PHICO obtained counsel to represent Manor Care and advised Manor Care of that fact. However, unbeknownst to PHICO or Manor Care, Ryland had moved for default judgment against Manor Care on August 24, 2001. The court entered the judgment of default on August 31, 2001.

After hearing this evidence, the circuit court observed that Ryland's attorney knew on August 23 that Godard "allegedly, had been brought into this case, and it was very shortly after that that this default judgment was obtained." The court queried whether it was "equitable that this case [did not] get tried on its merits because Mr. Godard had a conflict, and the law precludes him from doing what he said he would do, and he [had] to get out of the case[.]" In conclusion, the circuit court stated, "I

6

hang my hat on number one . . . in that the default judgment should not, in equity, in good conscience, be enforced. I'm not sure it rises to the level of negligence." For the reasons stated from the bench, the court subsequently entered an order granting the relief sought in the bill of complaint and vacating the default judgment entered against Manor Care. Ryland appeals from that judgment.

ANALYSIS

In Charles v. Precision Tune, Inc., 243 Va. 313, 317, 414 S.E.2d 831, 833 (1992), we stated that the provision now numbered subsection (D) of Code § 8.01-428 "does not create any new rights or remedies, but merely preserves a court's inherent equity power to entertain an independent action" by a party seeking relief from any judgment. We then enumerated the elements of this independent action in equity:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

Id. at 317-18, 414 S.E.2d at 833 (citing National Surety Co. of New York v. State Bank of Humboldt, 120 F. 593, 599

7

(8th Cir. 1903)); accord Media General, Inc. v. Smith, 260 Va. 287, 290, 534 S.E.2d 733, 735 (2000).  The party seeking relief under Code § 8.01-428(D) has the burden to prove each of these elements.  Media General, id.

On appeal, Ryland acknowledges that only three of these elements are in dispute: whether in equity and good conscience the default judgment should be enforced; whether an accident or mistake prevented Manor Care from having the benefit of its defense; and whether there was an absence of fault or negligence on the part of Manor Care.  However, Ryland asserts that the circuit court erred in setting aside the default judgment because Manor Care failed to prove these elements.  Manor Care disagrees and argues that the court's judgment is supported by sufficient evidence.

The parties do not dispute our standard of review in this appeal.  Since the circuit court heard evidence ore tenus, its judgment cannot be disturbed on appeal unless the court's findings are plainly wrong or without evidence to support them.  Code § 8.01-680; Pizzarelle v. Dempsey, 259 Va. 521, 527, 526 S.E.2d 260, 263 (2000); Blue Cross & Blue Shield of Virginia v. St. Mary's Hosp. of Richmond, Inc., 245 Va. 24, 34, 426 S.E.2d 117, 123 (1993).  We review the evidence and all reasonable inferences in the light most favorable to the prevailing party at trial.

8

Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 57, 419 S.E.2d 627, 630 (1992).

Before addressing the merits of Ryland's challenge to the circuit court's judgment, we point out that the court did not articulate specific findings with regard to the five elements that must be proven in order to obtain relief under Code § 8.01-428(D).[5]  Instead, the court stated only that the default judgment should not, in equity and good conscience, be enforced and that it was not sure whether Manor Care's conduct rose "to the level of negligence."[6]  We presume that the court nonetheless made the necessary findings since it set aside the default judgment.

Even so, we take this opportunity to stress that a trial court must articulate its findings with particularity regarding each of the five elements set forth in Precision Tune.  Because of the need to have finality and certainty with regard to judgments, see Byrum v. Lowe & Gordon, Ltd., 225 Va. 362, 365, 302 S.E.2d 46, 48 (1983), a trial court's decision to set aside a default judgment is a significant action and must, therefore, include its consideration of

---

[5] The parties stipulated that Manor Care had a good defense to the cause of action upon which the default judgment was granted.

9

and findings with regard to all the necessary elements.  In a somewhat analogous situation, i.e., setting aside a jury verdict and ordering remittitur, we require that the record include "both the trial court's conclusion that the verdict was excessive and a demonstration that, in reaching that conclusion, the trial court considered 'factors in evidence relevant to a reasoned evaluation of the damages.' " Poulston v. Rock, 251 Va. 254, 259, 467 S.E.2d 479, 482 (1996) (quoting Bassett Furniture Indus. v. McReynolds, 216 Va. 897, 911-12, 224 S.E.2d 323, 332 (1976)); accord Shepard v. Capitol Foundry of Virginia, Inc., 262 Va. 715, 721, 554 S.E.2d 72, 75 (2001).  No less detailed analysis is permissible when setting aside a default judgment.

Turning now to the merits of the issue on appeal, we conclude that, despite the sequence of events starting with PHICO's requesting Layman to file an answer to the re-filed medical malpractice action on behalf of Manor Care and ending with her ultimate decision not to represent Manor Care, the critical events that led to the entry of default judgment commenced when PHICO assigned the case to Godard. At that point, sufficient time remained before the August 24 deadline expired during which responsive pleadings could

[6] Ryland's assignments of error address only the sufficiency of evidence and do not challenge the court's

10

have been filed. Godard's office confirmed in writing on August 21 that he would file appropriate responsive pleadings on behalf of Manor Care. But, Godard later learned, at a time not shown in the record, that he had a conflict of interest and could not represent Manor Care. Unfortunately, he did not advise PHICO or Manor Care of that fact until August 27, three days after responsive pleadings were due.

We hold that the record is sufficient to support a finding that Godard's actions constituted a mistake that prevented Manor Care from having the benefit of its defense. See Director, State Employees Workers' Comp. Div. v. Evans, 889 S.W.2d 266, 269 (Tex. 1994) (attorney's failure to appear was due to accident or mistake when predecessor attorney misdated the trial date on a calendar and conveyed the wrong information to the new attorney). Because this mistake impacted Godard's ethical responsibilities, it is not akin to an attorney's error about a filing deadline or the negligent failure to file a pleading by a certain date. Godard had no choice but to decline the representation of Manor Care. As the circuit court correctly commented during closing arguments, the law precluded Godard from doing what he indicated to PHICO in

failure to enunciate these findings.

11

good faith that he would do. His conflict of interest and failure to inform either PHICO or Manor Care about that conflict until after the deadline for filing responsive pleadings had passed caused Manor Care to lose the benefit of its defense.

Next, we also hold that the record is sufficient to support the circuit court's implied finding that both PHICO and Manor Care were free from fault or negligence during this critical period.[7] However, Ryland argues that PHICO and Manor Care were, in fact, negligent because neither of them contacted Godard before August 24 to confirm that he had filed an answer on behalf of Manor Care, or called the circuit court clerk's office either to verify that Godard had filed responsive pleadings or to determine whether information Manor Care allegedly received concerning a 30-day extension of time was accurate. We are not persuaded

---

[7] Citing Ayres v. Morehead's Adm'r, 77 Va. 586 (1883), Ryland argues that the actions of PHICO must be attributed to Manor Care. In that case, this Court stated that "[t]he rule that a party who has, through the negligence of himself or his agents or attorneys, failed to avail himself of a defence which he might have made at law, will not be relieved in equity is too well settled to require any extended reference to the adjudged cases." Id. at 588. It is not necessary to decide that issue in the present case because we conclude that neither PHICO nor Manor Care were negligent during the period of time immediately preceding the default. We note, however, that Ryland has not argued that Godard's actions should be attributed to Manor Care.

12

by this argument.  Given the written communication from Godard's office advising that he would file responsive pleadings, we cannot say that either PHICO or Manor Care was negligent by failing to make further inquiries at that time.

The present situation is distinguishable from the circumstances in Media General that led us to hold that the defendant there was not free of fault or negligence.  In that case, the evidence showed only that a system put in place by the defendant to receive and respond to service of process had failed, but there was no evidence explaining how or why the system had failed.  260 Va. at 291, 534 S.E.2d at 735.  Thus, there was no evidence that the defendant was free of fault or negligence when it did not respond to the motion for judgment.  Id.  In contrast, we have evidence in the present case explaining why responsive pleadings were not timely filed after Godard agreed to represent Manor Care, and that evidence does not impute any fault or negligence to PHICO or Manor Care.

Finally, we hold that the record is sufficient to support the circuit court's finding that, in equity and good conscience, the default judgment should not be enforced.  As Ryland argued, this element does not carry more weight than the other four elements, all of which must

13

be proven in order to obtain relief under Code § 8.01-428(D).  The five elements set forth in Precision Tune, taken together, reflect the balance that must be struck between the need to uphold the rules of court by sanctioning the late appearance of a party and the injustice that results from denying that party the opportunity to litigate a claim on its merits.  See Restatement (Second) of Judgments § 67 cmt. a (1982).

CONCLUSION

In summary, we cannot say that the circuit court's judgment was plainly wrong or without evidence to support it.  See Code § 8.01-680.  The question here is not whether the evidence would have supported a judgment in favor of Ryland.  Instead, the relevant inquiry is whether, upon applying correct principles of law, the record contained sufficient evidence to support the judgment of the circuit court in favor of Manor Care.  Barnes v. Craig, 202 Va. 229, 235, 117 S.E.2d 63, 67 (1960) (citing Barnes v. Moore, 199 Va. 227, 228, 98 S.E.2d 683, 684 (1957)).  And, we conclude that it did.  As with a jury verdict, if there is evidence to support a trial court's judgment rendered after receiving evidence ore tenus, this Court cannot simply overturn that judgment and substitute its own judgment, even if its opinion might differ from that of the trial

14

court.  See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992).

For these reasons, we will affirm the judgment of the circuit court.[8]

Affirmed.

---

[8] In light of our decision, it is not necessary to address Ryland's remaining assignment of error.