## YOUNG v. SIGLER.

*(Circuit Court, S. D. Iowa, C. D.   November 13, 1891.)*

1. JURISDICTION—BILL TO CANCEL JUDGMENT IN STATE COURT.
   When the requisite jurisdictional amount is involved, and the citizenship of the parties is diverse, a federal court has power to grant relief against a judgment obtained in a state court by means of fraud.
2. JUDGMENT—EQUITABLE RELIEF—FRAUD.
   A bill for relief against a judgment at law alleged that complainant and another were sued for damages for a joint assault and battery; that complainant's co-defendant therein paid the plaintiff $100 in full settlement of the damages, and that by agreement between the latter two this settlement was kept secret from complainant, and the suit prosecuted against him for their joint benefit; that judgment was obtained for $4,000, and partly enforced by execution sales of complainant's lands; that complainant, having thereafter discovered the fraud, applied for a new trial, which was denied; and that he is without remedy in that court. *Held*, that the bill stated a ground for equitable relief against the judgment and sales.

In Equity.   Suit by John L. Young against Lyman P. Sigler to set aside a judgment at law on the ground of fraud in procuring it.   On demurrer to bill.   Demurrer overruled.

*Cole, McVey & Cheshire* and *T. H. Green*, for complainant.
*Kauffman & Guernsey* and *Harvey & Parrish*, for defendant.
Before SHIRAS and WOOLSON, JJ.

SHIRAS, J.   It is averred in the bill herein filed that on the 19th day of March, 1885, one William Lee brought an action in the circuit court of Decatur county, Iowa, against Lyman P. Sigler, the defendant herein, and John L. Young, the now complainant, to recover damages in the sum of $10,000 for a joint assault alleged to have been committed upon the person of said Lee by said Sigler and Young; that on the 12th day of October, 1886, while said action was pending and yet untried, the said Sigler and said Lee entered into an arrangement whereby it was agreed that said Sigler should pay to said Lee the sum of $100 in full satisfaction of all damages caused to said Lee by reason of said alleged assault, and that said sum was paid by said Sigler and by said Lee received in full satisfaction and accord of said cause of action; that it was further agreed between said Sigler and said Lee that the fact of such settlement, payment, and discharge of said joint cause of action should be kept concealed from said Young; that said action for damages should thereafter be prosecuted against said Young for the common benefit of said Lee and Sigler, who should mutually share all the fruits and benefits attainable therein; that complainant was kept in entire ignorance of these facts, and that in October, 1886, he was forced to go to trial, not knowing that the cause of action had been in fact satisfied and the case dismissed as to his co-defendant; that said Lee, with the secret and fraudulent co-operation of said Sigler, and with the perjury and false testimony offered by them, obtained from the jury a verdict for $4,000; that in fact the said complainant was innocent of the charge laid against him, and that, if said Lee suffered any damages by reason of the alleged assault, the same were due to the acts of the said Sigler; that complain-

ant, although moving to that end, was unable to obtain a new trial in said cause, and is without remedy, according to the rules and practice of the court at law in which this judgment was rendered; that, in pursuance of said fraudulent agreement, the said Lee assigned said judgment, in January, 1888, to one C. W. Hoffman, who in turn, without any consideration paid to him, assigned said judgment to said Sigler; that said Sigler caused execution, from time to time, to be issued on said judgment, and to be levied on the real and personal property of complainant; that by means of such levies and sales thereunder and the assignment of the certificates of sale the said Sigler has caused to be conveyed to himself two lots owned by complainant in the town of Grand River, Decatur county, two lots in the town of Leon, and two hundred acres of land in said Decatur county, the said property being bought in for sums far less than the fair value thereof, and that there is still left due on the record on said judgment the sum of $2,699.30; that, shortly after the rendition of said fraudulent judgment against him, complainant removed to the state of Colorado, and was kept in ignorance of the levies made upon his property and the sales made thereof, and that he did not obtain knowledge of the settlement and satisfaction of said claim sued on and of the fraudulent combination between Lee and Sigler until in November, 1890. The prayer is that the judgment be set aside and canceled; that the sales of property made on the executions issued thereon be set aside; that the defendant be required to account for the moneys realized from complainant's property, and for other adequate relief. To this bill the defendant demurs, the first ground being that this court has not jurisdiction to entertain a bill attacking a judgment rendered by a state court. When the proceeding is merely the equivalent of a motion for new trial or for a review of alleged errors committed on the trial, or for relief against some informality or irregularity in the proceedings before the state court, then it is settled that the application cannot be made to the federal court; but when the proceeding is to obtain relief by setting aside a judgment for fraud in the obtaining thereof then the federal court may take jurisdiction if the citizenship of the litigants is diverse, and the amount involved is sufficient. *Barrow* v. *Hunton*, 99 U. S. 80; *Johnson* v. *Waters*, 111 U. S. 640, 4 Sup. Ct. Rep. 619. In this case the complainant is a citizen of Colorado, the defendant of Iowa, the amount or value at issue exceeds $2,000, and the proceeding is in equity to set aside the judgment for fraud, and hence the court has jurisdiction of the cause.

That courts of equity will grant relief against judgments is not questioned, the point in dispute being in what the fraud must consist, in order to justify the setting aside the judgment at law. In *Insurance Co.* v. *Hodgson*, 7 Cranch, 332, Chief Justice MARSHALL gave the rule as follows:

"Without attempting to draw any precise line to which courts of equity will advance and which they cannot pass in restraining parties from availing themselves of judgments obtained at law, it may be safely said that any fact which clearly proves it to be against conscience to execute a judgment, and

of which the injured party could not have availed himself at law, or of which
he might have availed himself at law, but was prevented by fraud or acci-
dent, unmixed with any fault or negligence in himself or his agents, will
justify an application to a court of chancery."

In Black on Judgments, 369, the rule is stated in the following terms:

"Where a party, having a good defense to an action at law, is prevented,
by the fraud or fraudulent representations of the plaintiff or his attorney,
from setting up that defense, and a judgment is obtained against him with-
out any negligence or fault on his part, it is a proper case in equity for relief
against the judgment."

See, also, *Hendrickson* v. *Hinckley*, 17 How. 443; *Embry* v. *Palmer*, 107
U. S. 3, 2 Sup. Ct. Rep. 25; *Phillips* v. *Negley*, 117 U. S. 665, 6 Sup.
Ct. Rep. 901.

In *U. S.* v. *Throckmorton*, 98 U. S. 61, the distinction existing be-
tween fraud inhering in the very matter that was heard and determined
by the court rendering the judgment subjected to attack and fraud ex-
trinsic or collateral thereto is pointed out. In the former class of cases
the existence of the fraud is the matter which the court was called
upon, or might have been called upon, to hear and determine in the
trial of the issue before it, and the judgment of that court upon this
issue is final and conclusive. When, however, the fraud complained of
was not in issue before the trial court, but is extrinsic or collateral to the
issues heard,—as, for instance, if the defendant, by some fraud prac-
ticed by the opposing party, is prevented from making a defense open to
him, or is fraudulently misled as to the existence of material facts, and
thus in fact has been prevented from fully exhibiting his case,—in such
and similar cases a court of equity may grant relief. For illustration,
suppose two persons sign a promissory note as makers, A. being the real
debtor and B. a surety in fact. The note not being paid at maturity,
the owner brings suit thereon against A. and B. Thereupon A., with-
out the knowledge of B.; pays the note in full, but at the same time en-
ters into an arrangement with the plaintiff in the suit whereby it is
agreed between them that the fact of payment is to be kept concealed
from B.; that judgment is to be taken for the full amount of the note
against B., and payment enforced by execution, and the proceeds real-
ized to be shared equally between the plaintiff and A. B., being igno-
rant of the fact of payment having been made in full, does not so plead,
but sets up that he had been fraudulently induced to sign the note as
joint maker by misrepresentations made by the plaintiff and A. Upon
this issue the court adjudges against him, and a judgment is rendered
for the full amount of the note. After the time for obtaining relief from
the court at law has elapsed, B. discovers the fact that the note had been
paid in full under the supposed circumstances, and, further, that testi-
mony exists which, if adduced, would clearly sustain the defense that
he had been induced to sign the note through fraud. Under the rule
announced by the supreme court in *U. S.* v. *Throckmorton*, *supra*, a court
in equity would not grant relief against the judgment based upon the
latter ground, because that would, in effect, be retrying the issue in-

volved in the original case. But would not a court of equity grant relief upon the other ground, to-wit, that it now appeared that in fact the note had been paid, and therefore the plaintiff ought not to have further prosecuted the case, but that knowledge of this fact has been intentionally kept from B., in pursuance of a fraudulent conspiracy between A. and the plaintiff, the purpose of which was to compel B. to pay a sum not justly due, and to divide the same between the wrong-doers? Clearly it would be against good conscience to allow a judgment thus obtained to be collected, and the basis for the action of the court in equity would be the fact that the two parties had fraudulently combined together to deprive B. of his property, by obtaining a judgment upon a note which they both knew was already paid in full.

The bill now under consideration avers that the claim sued on by Lee was paid and satisfied in full before the case came to trial, and that Lee and Sigler thereupon entered into the fraudulent combination described, for the purpose of obtaining a judgment against Young upon a claim already paid and discharged. Counsel for defendant argue that the payment of a small sum like $100 by a joint wrong-doer for his own release should not in equity be deemed to work the release of the other wrong-doers when it is made clear that the actual damages are much larger, that fact being established by the amount of the verdict rendered against him by the jury. How can the court of equity know what the amount of the verdict would have been had the real facts been made known, to-wit, that Lee had released Sigler from all claim for damages for the sum of $100, leaving aside the question of the legal effect of such release as a satisfaction of the entire claim? But the case does not depend upon this single point. The bill charges a fraudulent combination between Lee and Sigler, entered into for the purpose, not alone of getting full compensation to Lee for any damages caused him, but of giving Sigler one-half of all that could, through his aid and assistance, be collected from Young; and according to the averments of the bill, Sigler has now succeeded in having transferred to himself a large amount of property belonging to Young, the complainant. Certainly nothing is shown which would justify a court of equity in holding that Sigler ought to be allowed to retain property thus acquired. It is argued in support of the demurrer that there was no duty or obligation resting upon Sigler to notify or inform his co-defendant of the fact that he had bought his peace and obtained a release from Young. The query is, what was it the duty of the plaintiff to do? If, in fact, he had, as is charged in the bill, accepted a given sum in full payment and discharge of his claim for damages, so that thereby the same had been released and ended, was he acting in good or bad faith towards the court, whose aid he was invoking, and towards the defendant, when he pressed for judgment on a claim already paid and discharged in full? According to the averments of the bill the defendant, Sigler, by his agreement with Lee in fact became interested as plaintiff, because he was to aid in obtaining the judgment, and was to share in the benefit thereof, and is now the owner thereof on the record. Under these circumstances, it cannot be said that he was

under no obligations to make known the truth. He had entered into a combination to obtain the money or property of Young by becoming an active party in the suit against Young, and in equity he must be deemed to be a co-plaintiff with Lee, and equally chargeable with him with the fraud perpetrated upon the court and the defendant in that action, when a judgment was taken for a large sum upon a claim which the plaintiffs knew had been already fully paid.

If the *gravamen* of the bill was the charge that the judgment had been obtained by perjury committed on the trial of an action at law, the objection urged to the failure to set forth specifically in what the perjury consisted, and by whom it was committed, would be well taken. Such does not seem to be the purpose, however, of these allegations. They are doubtless made in support of the general allegations that in fact the complainant does not now, and never did, owe any sum as damages for the alleged assault, which again is made to negative the idea that might otherwise be urged, that complainant ought to pay the sum actually due before asking relief against the judgment in question. Many of the points urged in argument by counsel for defendant may have weight when the cause is heard upon the evidence, because the facts may then make the propositions advocated by counsel pertinent and proper to be considered; but as the case is now submitted upon demurrer it cannot be said that ground for relief in equity against the judgment and the sale of property based thereon is not shown. The demurrer is therefore overruled, with leave to defendant to answer the bill by next rule-day.

WOOLSON, J. I concur in the foregoing opinion.