# MODESTO MUNITIZ AGUIRRE

*v.*

# SOBRINOS DE EZQUIAGA.

San Juan, Equity, No. 381.

1. The United States district court for Porto Rico has no jurisdiction to enjoin judgments of the local courts in cases where the latter have first, properly and legally, acquired jurisdiction of the subject matter and of the parties.

2. The United States court will not entertain a bill of review as to matters litigated in the insular courts.

3. A party who chooses his forum must abide the result.

4. United States Revised Statutes, § 720 (U. S. Comp. Stat. 1901, p. 581), construed.

5. Luce v. Mullenhoff, ante, p. 56, distinguished.

6. Issues decided between the same parties in the insular courts are *res judicata* in so far as the United States district court for Porto Rico is concerned.

Opinion filed September 7, 1906.

*Messrs. Hartzell & Rodriguez Serra,* solicitors for plaintiff.

*Francis H. Dexter, Esq.,* solicitor for defendants.

RODEY, Judge, delivered the following opinion:

This cause is before the court on the amended plea and an-

swer of the defendants and their motion to dissolve the injunction and dismiss the case.

For a complete understanding of the controversy between the parties, it is necessary briefly to review the facts. It appears that the defendants and their predecessors (composed of part of themselves) have been for many years merchants of considerable financial capacity in the city of San Juan, and that the complainant was for many years a merchant and coffee raiser at Cayey, down in the middle of the island of Porto Rico. In 1893, the complainant and the defendants entered into a contract whereby the latter were to turn over to him some coffee plantations and their plants and appurtenances at said Cayey, which he was to carry on in connection with a mercantile business there, and were also to permit him to open an account in their business establishment at San Juan, where they agreed to extend a merchandise and other credit to him to the extent of $25,000, which, under an addendum to the agreement, was to be increased under certain conditions. The complainant was to be charged no interest upon the account current, but was to make continuous proper payments out of the cash received in his mercantile business as he might think proper, and to send all coffee he raised or procured to them, for which he was to be credited at the market price at the time the same was received. The profits made by the complainant were to be divided equally between the respective parties. Presumably, the profits made upon the goods sold to the complainant were, in part, the consideration for the extending of the credit, the lending of the plantations, and the waiving of interest on the open account. There were some other provisions in this contract, such as a provision that the complainant would notify these merchants if he got into any tight place financially, and in such case it was provided they would have a right, at their option, to take hold of his business

Aguirre v. Sobrinos de Ezquiaga.

and liquidate it; or either party might end the contract on six months' notice to the other, etc. It had other minor provisions unnecessary to mention.

The parties commenced business under this management, and continued the same for about ten years,—that is, from February, 1893, to May, 1904, the defendants furnishing immense quantities of merchandise and cash to the complainant, amounting, probably, to more than a million dollars in the meantime, and he remitting cash and coffee to them as he saw fit, and presumably receiving his statements of account from time to time. The transactions, as stated, amounted to several hundreds of thousands of dollars between each reckoning period during the ten years. At the end of this period, the defendants evidently became dissatisfied, and canceled the agreement. Litigation ensued, which was carried on through several different sorts of proceedings, in their efforts to collect the balance which they claimed was due to them from the complainant, and in their efforts to retake possession of their coffee plantations.

It appears that the complainant herein in the insular courts, where all this litigation occurred, set up as a defense the fact that a partnership existed between the parties, upon which contention he was beaten at every turn in the local courts.

After such information on that subject as this court has been able to gather from the pleadings before it, including a copy of the contract between the parties, it is constrained to say, even though it is not necessary to a decision of the points now involved, that it believes this holding of the local courts was right. After the complainant herein had been beaten in his contention that the relation between himself and defendants was a partnership, he proceeded to defend against the suit of the defendants for a balance due on account current between the parties, which defendants claimed amounted to some $80,000, but the result

was a judgment against him for approximately that amount. From this judgment he appealed to the supreme court of the island, which court affirmed the decision of the lower court. When the case was remanded to the lower court, the defendants called for an execution on the judgment, but the complainant made an effort there to enjoin the further prosecution of defendants' suit, on the ground that he had some proceeding still pending about this partnership matter; but his efforts in that behalf were denied. Then he came into this court and filed his bill of complaint, showing that, from the beginning of the litigation between the parties, this court had had complete jurisdiction, because all of the parties to it were subjects of the King of Spain. He set up the contract of 1893 between the parties, alleged a partnership between them, recited the fact of the judgment against him for this large amount of money, and, in brief, set out that during the years while the contract existed and while he had been receiving from the defendants these large amounts of cash and merchandise continuously, and had been sending them payments of cash and consignments of coffee, that they fraudulently failed and neglected to credit him with the full market price of the coffee on the days it was received by them, although he had reposed full confidence in them for that purpose, and that the difference in his favor would be some $30,000, were these credits properly entered in his favor, and that he had been charged something over $5,000 in the account of the defendants on account of one half the discount of changing the money, in the transactions between the parties, from the circulating medium in Porto Rico to United States currency at the time the law obliged that to be done. He also recited the number of suits that had been brought against him by the defendants, and he set up the fact that only within a short time previously had it come to his knowledge that the defendants had not credited him.

Aguirre v. Sobrinos de Ezquiaga.

with a proper price for his coffee at the several times it was sent
to the defendants; and made several other allegations that it is
not deemed necessary to refer to here. Then he prayed for an
accounting between the parties, and that, after it should be had,
the defendants should be restrained from attempting to collect
any other or different amount than should be found due by this
court, and prayed for an injunction in the meantime to prevent
the execution from issuing on the $80,000 judgment in the local
court against him. This court, through a previous judge,
granted a temporary restraining order after the filing of a bond
in the premises, and the same was issued. Thereafter, the de-
fendants moved for a dissolution of this temporary injunction,
and the same was argued at length before the present judge, and
briefs were filed in support of the respective contentions.

One examination of the matter, we refused to pass upon the
question of the dissolution of the temporary injunction, for the
reason that, if the court had jurisdiction, the injunction ought
to be permitted to stand; and if the court was without jurisdic-
tion, the whole cause should be dismissed; and thereupon or-
dered a full argument of the cause upon the motion, the plea,
and the sworn answer in support of the plea. This argument
was thereafter had, and subsequent to it, counsel filed additional
elaborate briefs in the premises. We have given considerable
time to the consideration of the whole subject-matter as thus
finally presented, and we are unable to see how this court has
any jurisdiction to intermeddle in the controversy at all. In
so far as the court can see, the matter is *res judicata,* and the
complainant has no standing here.

Sec. 720 of the Revised Statutes of the United States (U. S.
Comp. Stat. 1901, p. 581), which, of course, is applicable to pro-
ceedings in this court, provides that: "The writ of injunction
shall not be granted by any court of the United States to stay

Aguirre v. Sobrinos de Ezquiaga.

proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

.There is hardly a subject regarding the jurisdiction of courts of the United States that has resulted in so much contention as this, as shown by the efforts made by counsel to avoid the force of this act of Congress. It is enough to weary a person to even try to follow the decisions holding against the jurisdiction, save as therein specified. In fact, so far as we have examined the question, it appears to be doubtful if there ever was a case where the true and plain import of this act of Congress was successfully attacked. The efforts that have been made in that be· half are often marvels of ingenuity. It may be but· a backhanded compliment to counsel for complainant here, but the present incumbent of this bench can state that rarely has he ever known such an able argument supported by a few close but distinguishable cases. From beginning to end, with all due respect, in our opinion, it is an effort exhibiting marvelous ingenuity and forceful ability to apply inapplicable decisions,—to change settled law as to known facts.

It is fundamental in this country that a United States court will not enjoin or intermeddle with proceedings in a state (and, of course, by analogy, in a territorial or insular) court, where the latter has first, properly and legally, acquired jurisdiction of the subject-matter and the parties. See note to Central Trust Co. v. Grantham, 27 C. C. A. 575; Riggs v. Johnson County (United States ex rel. Riggs v. Johnson County) 6 Wall. 195, 18 L. ed. 776; Moran v. Sturges, 154 U. S. 256, 38 L. ed. 981, 14 Sup. Ct. Rep. 1019; Sharon v. Terry, 1 L.R.A. 572, 13 Sawy. 387, 36 Fed. 337; Note to Garner v. Second Nat. Bank, 16 C. C. A. 90; Leathe v. Thomas, 38 C. C. A. 75, 97 Fed. 136. There is apparently not a case in the books varying this rule,

Aguirre v. Sobrinos de Ezquiaga.

and every case cited by the able counsel for complainant here has some condition or fact connected with it that easily distinguishes it, and clearly shows that it does not vary this well-known rule.

This complainant has had his day in court. We cannot imagine what could have been litigated between these same parties in the insular court, after respondents had succeeded in their contention that the contract between them was not a partnership, unless it was the determination of the proper balance due on the open account between the parties. It is incomprehensible that a presumably intelligent man, doing business on this island for some ten years as a merchant and coffee planter of considerable pretensions, who was sending in for thousands of dollars worth of goods almost daily to these defendants at San Juan, and presumably receiving from them a bill with every shipment of goods, and probably monthly statements of the account between the parties, showing credits given him for cash sent in and coffee received from day to day, should not have discovered the fact that they had, during this time, defrauded him to the extent of $30,000. And if, as a matter of fact, he did not discover it, he is guilty of the grossest laches and negligence. In his complaint he does not make out any case of fraud, save by the mere fact of assuming and alleging it. He does not set out the particular items of coffee wherein the market price was different from that credited to him, although he files with his bill of complaint, as an exhibit, an immense account current between himself and the defendants during these years. If this cause of action can be maintained in this court at this time, we are absolutely incapable of seeing how it can be characterized as anything else than retrying here the only matter which could possibly have been in controversy between the same parties in the local court, after complainant was defeated in his efforts to

II. Porto Rico.—10.

Aguirre v. Sobrinos de Ezquiaga.

show a partnership between the parties; that is, to retry the question of how much balance of account was due from him to the defendants here (plaintiffs there). With all due respect, no sort of sophistry can make anything else out of this proceeding, in our opinion.

An examination of this long account between the parties, filed as an exhibit here, shows that the complainant was indebted to the defendants about a month after the beginning of their dealings in February, 1893, in the sum of about $6,000. And balances were thereafter struck, according to the account, as follows, and each showed in round numbers the balances mentioned due from this complainant to the defendants, that is to say:

May 3, 1893, ..............................$ 76,000.00
September 8, 1893, ......................... 57,000.00
July 20, 1895, ............................. 173,000.00
November 30, 1896, ......................... 260,000.00
August 12, 1897, ........................... 226,000.00
February 25, 1898, ......................... 226,000.00
October 27, 1898, .......................... 228,000.00
October 6, 1900, ........................... 162,000.00
January 15, 1901, .......................... 94,000.00
May 5, 1904, ............................... 80,199.40

And during the interim between all of these periods, large transactions took place between the parties, often involving several hundreds of thousands of dollars.

Counsel for complainant contends that, while he might have a remedy in the local courts, because of the citizenship of the parties he has a perfect right to come into this court. The reply to this is, that it is as fundamental as that one court will not interfere with another, that a United States court will not entertain a bill of review as to matters which were litigated in a state

Aguirre v. Sobrinos de Ezquiaga.

court between the same parties. If this was a court such as they have in other territories, having the jurisdiction of a circuit and district court of the United States, as also chancery and common-law jurisdiction locally, and these matters had been litigated between these parties all in the same court, there might be some chance that a bill of review would be entertained if a proper showing could be made; but we contend that such a showing as is made here would not be sufficient even in that case.

The allegation of the complainant here (defendant in the other court) that he was wholly ignorant of the matters and things upon which the action here is founded, during that trial, is, as stated, almost unbelievable, and if we accept it as true, which we are willing to do, it shows him to be guilty of negligence and laches, as stated, against which not even a court of equity will relieve. He was there in that court to defend against an account on which he was sued, where the court could see and hear the witnesses and could pass upon the credibility to be given to them, and that is the forum where his defense ought to have been made, and it is presumed that he did make it there. If he did not, as is contended, it is his own fault. If he desired to invoke the equity jurisdiction of this court, he could have removed the cause here in the first instance. He chose his forum and he must abide its decision. Cromwell v. Sac County, 94 U. S. 351, 24 L. ed. 195; Beattie v. Wilkinson, 36 Fed. 646.

Sec. 147 of Story on Equity, cited by complainant, does not, in our opinion, sustain him; and wherever that and the succeeding sections of that work cited have any application, it will be found to be in state courts or United States courts where all the subject-matter is litigated, and does not touch the rule that a court receiving its powers from an entirely different source will

not interfere with the proceedings in a court of concurrent juris-diction getting its powers in another way.

The section from Eaton on Equity, cited by complainant, with reference to the good faith that should exist between parties standing in fiduciary relations to each other, is not, in our opin-ion, applicable here, because, from a careful reading of the con-tract between the parties, there was little or no relation between them save that of debtor and creditor, and it appears that the local court so found the fact to be.

The case of Davis v. Tileston, 6 How. 114, 12 L. ed. 366, is confidently cited by complainant. We do not think it is appli-cable at all, for the reason that it was an appeal from a United States court to the Supreme Court of the United States. It did not touch the question of the right of a United States court to enjoin or interfere with the proceedings in a state court. A cita-tion in one of the notes to that case is instructive here:

"Unless complainant has an equitable defense of which he could not avail himself, or was prevented by fraud or accident, and not his own negligence, from availing himself of a legal defense at law, the court will not relieve;" citing Hendricksen v. Hinckley, 17 How. 443, 15 L. ed. 123.

"Merely to show that injustice has been done by the judg-ment is not sufficient; it must appear that this resulted, notwith-standing the close attention and diligence of the complainant;" citing Cairo & F. R. Co. v. Titus, 27 N. J. Eq. 102, and many other citations.

The citation of § 507, vol. 2, of Freeman on Judgments, with all due respect, is not applicable, in our opinion, because it sim-ply states the rule which is applicable in a court of equity in a suit for relief against an unconscionable judgment in a court of the same state, deriving its powers from the same source or sovereignty. And it is doubtful whether, even under the rule

laid down in that section, this complainant could maintain a
bill for review in the insular court on the facts he alleges here,
because he is guilty of such unpardonable negligence in connec-
tion with the question litigated. There are a few cases to be
found in the books, noticeably Payne v. Hook, 7 Wall. 425; 19
L. ed. 260, a glance at which might deceive the reader into be-
lieving that the rule, which is unquestioned, that the equity
jurisdiction and remedies conferred by the Constitution and
statutes of the United States cannot be limited or restrained by
state legislation, would permit a court of equity of the United
States, notwithstanding § 720 of the Revised Statutes (U. S.
Comp. Stat. 1901, p. 581), to interfere with a proceeding in a
state court; but it will be found that this is not the fact. In
Payne v. Hook, a citizen of Virginia brought a bill against the
public administrator of a county in Missouri, who was guilty
of fraud in connection with the administration of her brother's
estate. In Missouri, all matters with reference to administra-
tion had to be carried on in their probate court there. The suit
in question was one by a citizen of Virginia against citizen of
Missouri and was the initiation of the first proceedings between
them; not, as is the case here, where the litigation between them
is ended, save that the execution on the judgment has been tem-
porarily enjoined by this court in the insular court. If that had
been a suit to enjoin some process of the probate court in Mis-
souri, and to retry the issues it passed upon, it is certain that
the demurrer would have been sustained.

Another case cited with equal confidence is that of Johnson
v. Waters, 111 U. S. 640, 28 L. ed. 547, 4 Sup. Ct. Rep. 619.
This was also a proceeding in a United States court in the dis-
trict of Louisiana, where the court, at first glance, appeared to in-
terfere with the proceeding in a state court, but which it, in fact,
did not do, because it held that the circuit court of the United

Aguirre v. Sobrinos de Ezquiaga.

States had jurisdiction in equity of a bill filed by a creditor of a deceased person (not by one of the parties to the litigation, as is the case here) to set aside for fraud a sale of the real estate of the deceased, which was made and confirmed by order of a state court having competent jurisdiction, when the inquiry is not into irregularities of proceeding in the other court, but into actual fraud in obtaining the judgment or decree of sale and confirmation.

We are of opinion that there is nothing in our views here expressed that in any manner militates against the holding recently made in the case of Luce v. Mullenhoff, ante, 56, because that was a case where the plaintiff in the insular court conspired with an intending purchaser of mortgaged property, and both of them are alleged to have deceived the insular court, where the matter was tried; the property was sold and the title vested in the fraudulent purchaser. The suit was not against any proceedings in the court, but was directed against the plaintiff and the purchaser of the property at the sale, who were alleged to be guilty of the grossest fraud, and both of whom, as alleged, had deceived the insular court. It was not a case like this, where the effort appears to be to get a new trial in a United States court of an ordinary suit on open account in an insular court. It was a case asking for a decree to hold these beneficiaries trustees for the plaintiff's benefit, who was not a party to the former proceedings. It was a case which, if proved, will be something like that of Young v. Sigler, 48 Fed. 182, where one defendant, secretly and unknown to the other or the court, bribed the prosecutor to dismiss as to him, and recover from the codefendant for the joint benefit of the conspirators.

The case of Barrow v. Hunton, 99 U. S. 80, 25 L. ed. 407, is an instructive case in pointing out the line of distinction between that class of cases, which appear to be extremely few in

Aguirre v. Sobrinos de Ezquiaga.

number, where courts of equity of the United States will entertain jurisdiction to grant relief against judgments or decrees of state courts, and those wherein they will not entertain such jurisdiction. It is said to be that where the suit in the United States court is an original and independent proceeding, arising upon new facts, although having relation to the validity of an actual judgment or decree in the state court, the jurisdiction will be entertained if, of course, the court has jurisdiction on the ground of citizenship. In fact, the judge who decided that case would not go farther in reference to the doctrine than to say that: "It (the right to thus interfere) may be affirmed to exist."

To show the correctness of the court's position in the views here expressed, it is only necessary to consider what would occur in case jurisdiction should be taken of this cause. It is manifest that the court would order an accounting between the parties and would have to go and review every inch of the ground that was presumably gone over in the trial at law on the open account or account stated between the parties in the local court, and would have to receive evidence as to the price of coffee day after day through ten years of time, and probably the evidence on that would be very conflicting. It would have to enjoin the levying of the execution in the meantime, and, at the end of protracted litigation, it might, as matter of law and fact, find that this complainant had nothing to complain of, and that he had been given due and proper credit for all the coffee he ever shipped to the defendants, as is alleged in their sworn answer in support of their plea here. The statement of this proposition, it is submitted, shows that it would amount to nothing but a new trial of an action in a state (insular) court. This sort of practice cannot be tolerated under § 720 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 581) nor under the comity that should

exist between two systems of courts which are not given power to review each other's decisions, even though their authority is derived from a common source. To take jurisdiction in this case would be pernicious in its results. ·

With all due respect, we feel certain that such a case of fraud has not been shown as to take this controversy out of the rule of *res judicata,* and we subscribe, as we must, to the doctrine that the comity which obtains between courts of concurrent jurisdic-· tion forms a recognized part of their duty, and that this duty· requires that after a person has chosen his forum,· he should not be permitted thereafter to retry his case in another court of con- current jurisdiction. A departure from this rule would lead to the utmost confusion and to endless strife between courts vested with separate, though at times, concurrent jurisdiction. Cen-´ tral Trust Co. v. Grantham, 27 C. C. A. 575, supra.

It follows from the views here expressed that this court is without jurisdiction in this case, and the plea will therefore be sustained, the motion to dismiss the injunction will be granted, and the cause will be dismissed at the costs of the complainant. Proper orders and a judgment to that effect will be entered.