GIRAND v. KIMBELL MILLING CO. et al.

No. 9600.

Circuit Court of Appeals, Fifth Circuit.

Jan. 14, 1941.

F. D. Brown, of Lubbock, Tex., for appellant.

H. D. Payne, Charles Kassel, and Melvin F. Adler, all of Fort Worth, Tex., for appellees.

Before SIBLEY and HOLMES, Circuit Judges, and DAWKINS, District Judge.

SIBLEY, Circuit Judge.

Girand as trustee in bankruptcy of Boothe Mill & Elevator, Inc., sued Kimbell Milling Company in the district court to recover a preference alleged to have been received in the sale of certain wheat of the bankrupt three weeks before bankruptcy. Kimbell Milling Company was also sued in a State court by and in behalf of persons claiming to own some of the wheat, alleging its conversion by the sale. Kimbell Milling Company moved to dismiss the trustee's suit as showing no cause of action and also for want of jurisdiction; and subject to that motion sought to implead the suitors in the State court as third party defendants. This latter was done,

and the third party defendants, in addition to claiming the proceeds of the wheat, moved to dismiss the whole proceeding because the original plaintiff had pleaded no cause of action of which the district court had jurisdiction. There was a welter of other pleadings in disregard of the simplicity required by the Rules of Civil Procedure. It is hard to tell whether there was a pretrial hearing, a motion for summary judgment, or a trial of the motions to dismiss. Evidence was heard, especially the deposition of Joe F. Boothe, who had acted for Boothe Mill & Elevator, Inc., in the dealings with Kimbell Milling Company. The agreed narrative of the evidence recites: "On March 25, 1940, upon the motion of the third party defendants to dismiss this suit for want of jurisdiction, all matters of law and evidence were heard by the court." The judgment itself recites that there were heard, among other things the motion of Kimbell Milling Company to dismiss, and "the motion of the third party defendants challenging the jurisdiction of the court in this case"; and the conclusion announced is "that this court has no jurisdiction of said cause of action", and the whole case was dismissed without prejudice to the action in the State court.

■ It is the duty of the district court, with or without a motion, to dismiss an original suit or to remand a removed one whenever it appears that the suit does not really and substantially involve a controversy of which the court has jurisdiction. 28 U.S.C.A. § 80. It is unnecessary to discuss generally what may be done on a pretrial hearing. The record sufficiently shows that the court heard the motions to dismiss, treated them as pleas to the jurisdiction, and without objection heard evidence on them; the trustee himself offering the deposition of Boothe on which, as the opinion of the court shows, the decision was mainly rested. It appeared without contradiction that Boothe Mill & Elevator, Inc., had bought wheat and shipped it to Kimbell Milling Company during the summer and early fall, Kimbell storing it for sale, and paying drafts drawn against the wheat sometimes with bill of lading attached and sometimes not, but all advances being for wheat actually in Kimbell's warehouses or en route on bill of lading transferred to Kimbell. There was no express agreement, but Boothe says he expected to pay interest on the advances and storage on the wheat till it was disposed of, it standing as security therefor

meanwhile. Kimbell kept its books accordingly. The price of wheat went down, and Kimbell asked for additional security, saying otherwise it would sell the wheat. Boothe could furnish no security, and acquiesced in the sale, which paid the advances and interest and part but not all of the storage charges. Three weeks later the bankruptcy occurred, insolvency probably existing at the time of the sale and known to Kimbell.

■ On its face this was the ordinary case of a warehouseman or factor making advances against goods placed in his hands and having a lien for the advances and interest, and for the expense of keeping the goods. 25 C.J., Factors, §§ 89(b), 93(b). If Kimbell was not acting as a factor, there was a pledge of wheat in possession of the pledgee, with a like result. C.J., Pledge §§ 13, 90(4). A warehouseman may be a pledgee. 67 C.J., Warehouseman, § 73(2). The sale of the wheat and appropriation of the proceeds with the bankrupt's consent was not the preferential payment of an unsecured debt, but was the foreclosure of a pledge or lien acquired for value at the time the money was advanced and the storage furnished. There was never an unsecured debt, and without that there could be no preference. Adams, Trustee, v. City Bank & Trust Co., 5 Cir., 115 F.2d 453.

■ But the trustee contends that the security for the advances was void, and the advances and storage charges were unsecured debts, because Kimbell had not qualified as a public warehouseman under the Texas statute, Revised Civil Statutes Arts. 5568, 5569. We are referred to no penal or prohibitive provisions of the Texas statute which ought to nullify a pledge of wheat for advances where no warehouse receipts are issued as a State warehouseman and nothing attempted by virtue of the State statute. Kimbell Milling Company was a bonded warehouseman under the United States Warehouse Act, 7 U.S.C.A. §§ 241 and ff; and issued a receipt as such for each shipment of wheat, but kept the receipts in its own files, since the wheat was pledged to it. It is true that there is no evidence in the record that this particular wheat was to move, or did move in interstate commerce, but we judicially know that there is a large interstate movement of Texas wheat; and when wheat is put into a federal bonded warehouse it ought to be presumed that it is intended to become a part of interstate commerce. It is not necessary to the validity of a warehouse receipt issued by a federal bonded warehouse to prove that the wheat it covers was intended to be shipped out of the State. It is in fact generally mingled in the warehouse with other wheat and becomes part of the mass on storage. The district court rightly held that as between the bankrupt and Kimbell Milling Company there was no unsecured debt preferentially paid. The parties were all citizens of Texas, and federal jurisdiction rested wholly on there being a preference to be recovered. Bankruptcy Act § 60, sub. b, 11 U.S.C.A. § 96, sub. b. It appearing that there was none, the court properly dismissed the whole proceeding without prejudice to the rights of the third party defendants.

Judgment affirmed.