### YELLOW CAB CO. v. PRICE.
#### No. 4963.

District Court, N. D. Illinois, E. D.
June 18, 1943.

Miller, Gorham, Wescott & Adams and Charles F. White, all of Chicago, Ill., for plaintiff.

Joseph D. Ryan, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

On August 27, 1936, Arlouine Price (hereinafter called counterclaimant) was injured while a passenger in a taxicab for hire, owned and operated by the Yellow Cab Company, a corporation (hereinafter called complainant), organized and existing under and by virtue of the Laws of the State of Maine.

The counterclaimant on March 4, 1937, filed a suit in the Circuit Court of Cook County to recover damages for the injuries sustained.

On November 18, 1938, a jury returned a verdict in counterclaimant's favor assessing damages at $40,000.

On December 9, 1938, the trial court entered judgment on the verdict for $30,-000, after a remittitur of $10,000 by the counterclaimant.

An appeal was taken from the judgment by the complainant to the Appellate Court of Illinois where, on May 28, 1940, it was reversed and the case remanded for a new trial.

The counterclaimant's petition for rehearing was denied on June 13, 1940. 305 Ill.App. 622, 27 N.E.2d 856. The Appellate Court then modified its opinion upon counterclaimant agreeing to a remittitur of $15,-000.

On July 9, 1940, the Appellate Court entered judgment for $15,000 which was later satisfied.

On December 31, 1942, the complainant filed in this Court the complaint herein praying first, that the verdict and judgment of the Circuit Court and Appellate Court be vacated and set aside because of fraud supposed to have been committed by counterclaimant in describing her injuries in said Courts; second, that this Court then determine the actual damages sustained by the counterclaimant as a result of the alleged accident; and, third, that the Court enter a judgment in favor of complainant for the amount this Court finds the judgment of the Appellate Court exceeded the amount that should have been awarded the counterclaimant.

On February 3, 1943, the counterclaimant filed her answer, which included a counterclaim, praying the remittiturs given in the Circuit and Appellate Courts be vacated and set aside, and a judgment be entered on the verdict of the jury for $40,000, or in the alternative, the judgment of the Circuit and Appellate Courts be vacated and set aside and this Court determine the damages counterclaimant is entitled to receive as a result of the injuries she sustained in the above mentioned accident. The counterclaim contained two counts, the prayer for relief being the same in both counts.

On February 23, 1943, the complainant filed a reply to the answer of counterclaimant together with a motion to dismiss the counterclaim.

On March 1, 1943, the complainant filed its brief in support of its motion to dismiss the counterclaim. On March 22, 1943, a memorandum in opposition to the complainant's motion to dismiss the counterclaim was filed by counterclaimant, and on April 5, 1943, a reply brief was filed by complainant.

The counterclaimant made no motion to strike the complaint, being content to file an answer and a counterclaim.

The reply to the counterclaim prays for a dismissal for want of equity.

The Court, after considering the pleadings in this case, is of the opinion that the complaint and cross-complaint should be dismissed for want of equity. There are no facts alleged in either the complaint or cross-complaint which warrant the Court carrying the proceedings further for, at the threshold, it appears the parties herein are not entitled, as a matter of equity, to the relief prayed.

It is admitted by the pleadings that a judgment was entered by the Appellate Court of Illinois which has been fully satisfied by payment. There is no request herein for injunctive relief to restrain the enforcement of any judgments secured in the State Court. The elements essential to a cause in equity are not here present. The cause of action heretofore pending in the Circuit Court and reviewed by the Appellate Court has been terminated by the entry of the final judgment and its payment.

The circumstances under which a court of equity will set aside a judgment on the ground of fraud have been the source of much litigation both in the Federal and State Courts. Most, if not all, of these cases involve applications to the Court for relief against the enforcement of judgments.

The facts in this case are not similar to those in the case of Chicago, R. I. & P. Ry. Co. v. Callicotte, 8 Cir., 267 F. 799, re-

ferred to in the briefs. In the Callicotte case the judgment was secured through a conspiracy to perpetrate a fraud upon the Court and the use of that agency in carrying out the fraud. The judgment entered on the verdict was reviewed and affirmed. The railway company in the lower Court attempted to invoke the writ of coram nobis and was denied the right. After the Supreme Court affirmed both judgments, 204 S.W. 528; 274 Mo. 689, 204 S.W. 529, a bill in equity was filed to restrain the enforcement of the judgment, the judgment being in existence unsatisfied.

In the instant case, the complainant, in reply to the answer filed by the counterclaimant, does not deny that the counterclaimant sustained an injury to her cervical spine, her left hip and lower back, but merely states that the injury was not severe. It does not deny that the counterclaimant was in a hospital for many months under the care of physicians furnished by it, and that the counterclaimant was examined by various physicians at "its behest", but contents itself by denying the materiality of the affirmative allegations found in the counterclaim.

It appears from the pleadings that when the counterclaimant procured a judgment for $40,000 it was reduced to $30,000 by reason of a remittitur being filed. It is evident the complainant was not satisfied with this figure and appealed to the Appellate Court of Illinois. After the Appellate Court reversed the judgment, the complainant had the right and opportunity to have a re-trial of the issues because a petition for a rehearing was denied the counterclaimant. Evidently it did not choose to do this for when the Appellate Court reduced the judgment from $30,000 to $15,-000 upon the counterclaimant filing a remittitur therein, it paid same. It is therefore evident from the pleadings that the complainant was then satisfied for two reasons: first, it did not appeal to the Supreme Court of Illinois and, second, it paid the judgment.

Justice Sanborn speaking in Re National Surety Company v. State Bank, 8 Cir., 120 F. 593, at page 597, 61 L.R.A. 394, said: "Fraud, accident, and mistake are three great heads of equity jurisprudence; and whenever injustice or wrong, irremediable at law, is about to result from either, power is vested in, and the duty is imposed upon, the courts of equity, to prevent the threatened injury. Their jurisdiction rests upon the fact that, unless they act, wrong will be perpetrated, which cannot be remedied; and the bills exhibited to them are appeals to the consciences of the chancellors, to prevent injustice."

But, what is the Court asked to do here? It is asked to re-litigate a cause of action not only fully litigated but one finally settled by an agreement of the parties. It may be true the plaintiff in the personal injury action exaggerated, to some extent, her claim of injuries sustained and did not suffer as much pain as she represented to the jury in the trial court, but the jury passed upon these matters. It heard, according to the allegations in the cross-complaint, the defense offered by the complainant to such exaggerated claims, and after doing so, fixed the amount of damages.

In cases of this kind, the element of exaggeration of injuries is often present and it is one of the incidents of this class of jury trials. When appeals are taken from such judgments, the reviewing courts are asked to review the records on which they are based and when they do, and enter judgments which are then settled by payment the litigation is at an end.

The complaint filed herein sets forth no facts that can be characterized as newly discovered evidence heretofore unknown to the parties and not previously litigated.

Since no equitable grounds exist upon which this suit can be predicated, the Court will consider whether or not a suit at law can properly be drawn from the complaint, since under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, both types of action can be included in the one complaint. The controlling question then becomes: Is the Court without jurisdiction of the subject matter of the suit?

It is the duty of the District Court, with or without a motion, to dismiss an original suit or to remand and remove one whenever it appears that the suit does not really and substantially involve a controversy of which the Court has jurisdiction. Girand v. Kimbell Milling Co., 5 Cir., 116 F.2d 999.

To give this Court jurisdiction the complaint should recite facts entitling the plaintiff to the relief prayed, and it should show on its face that the matter in controversy involves $3,000, exclusive of interest and costs. It should contain a statement of facts from which it can be deter-

mined that the amount involved exceeds $3,000 or more.

Does the complaint state the amount in controversy to be $3,000 or over, exclusive of interest and costs?

 The plaintiff, in stating the amount in controversy, requested the "court enter judgment for plaintiff for an amount by which $15,000 exceeds the amount to be fixed by this court as the actual damages, if any, sustained by defendant."

The pleader does not allege the amount in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

The prayer of the complaint requests the "court determine the actual damages, if any, sustained by the defendant as the result of the accident she was in while a passenger in one of the plaintiff's taxicabs."

The Court may examine the entire complaint to determine the jurisdictional amount in controversy. This it has done. The Court could determine the amount of damages due the plaintiff in this case to be such a sum, if subtracted from the alleged $15,000, would be less than the jurisdictional requirement, namely, $3,000, and, therefore, the complaint does not state a cause of action that gives the Court jurisdiction, and should be dismissed.

 The Court is also concerned, however, with another question here presented, namely, the attempt of the parties to have a cause once litigated in the State Courts re-tried in the Federal Courts. It is true the action of fraud is a new one, but the subject matter on the whole is the same. The pleadings disclose that fact.

To permit such re-litigation would lead to a breakdown in that "limitation of the power of the federal courts dating almost from the beginning of our history and expressing an important congressional policy—to prevent needless friction between state and federal courts". Oklahoma Packing Company v. Gas Company, 308 U.S. 530, 309 U.S. 4, 60 S.Ct. 215, 218, 84 L.Ed. 447, 537.

It would lead future litigants who had first resorted to the State Courts—there until final judgment and dissatisfied—to prolong the litigation by then removing the action to the Federal Courts.

 When this action for personal injury damages was commenced by the plaintiff and defended by the defendant in the State Courts each knew of the diversity of citizenship of the parties and made no use of the removal statute, 28 U.S.C.A. § 71, thus deliberately choosing their jurisdiction and tribunal. There the plaintiff secured the judgment which the defendant had reviewed and reversed in the upper Court; there the defendant chose to abide by the judgment of the Appellate Court of Illinois by paying the same. The plaintiff and defendant relied upon the State Courts, hence, if any further litigation of the matter is possible, they ought to continue where they began.

 It is not the policy of the Federal Courts to unduly interfere with judgments obtained in State Courts and this Court should not conduct a proceedings, no matter by what name called or how labeled, that will have as its purpose the interference with such judgments unless a very good reason appears for so doing.

Justice Frankfurter speaking in Re Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 148, 86 L.Ed. 100, 137 A.L.R. 967, said:

"The guiding consideration in the enforcement of the Congressional policy was expressed by Mr. Justice Campbell, for the Court, in Taylor v. Carryl, 20 How. 583, 597, 15 L.Ed. 1028:

" 'The legislation of Congress, in organizing the judicial powers of the United States, exhibits much circumspection in avoiding occasions for placing the tribunals of the States and of the Union in any collision.' "

A long and unbroken line of decisions commencing with the birth of the Federal Courts hold the Court, whether Federal or State, which first takes possession of a res withdraws the property from the reach of the other.

Whenever the Federal Courts of Review have been called upon to decide questions of conflict between State and Federal Court jurisdiction they have been careful to point out and emphasize there should be no friction between the two, nor any unwarranted intrusion upon State sovereignty. Consequently, when litigants having the freedom to make their choice of jurisdictions do so, such as in the case here presented, they should remain in that jurisdiction until the litigation ends.

For the reasons herein stated it does not appear to the satisfaction of the Court that

this suit really and substantially involves a dispute or controversy properly within the jurisdiction of the District Court, and, therefore, the suit will be dismissed and it is so ordered.